## MAIORANO v. BALTIMORE AND OHIO RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 103.   Argued March 5, 8, 1909.—Decided April 5, 1909.

The construction of a state statute by the highest court of the State must be accepted by this court even though similar statutes of other States have been differently construed by the highest courts of those States.

A treaty between the United States and a foreign government within the constitutional limits of the treaty making power is, by the express words of the Constitution, the supreme law of the land binding alike on national and state courts and must be enforced by them in the litigation of private rights.

While undoubtedly the giving of actions for injury and death results in care and security against accidents to travelers the protection and security thus afforded are too remote to be considered as elements in contemplation of the contracting powers to the treaty of 1871 between Italy and the United States.

By a fair construction, Articles 2, 3 and 23 of the treaty with Italy of 1871, 17 Stat. 845, do not confer upon the non-resident alien relatives of a citizen of Italy a right of action for damages for his death in one of the States of this Union although such an action is afforded by a statute of that State to native resident relatives, and although the existence of such an action might indirectly promote his safety; and so *held* as to the statute of Pennsylvania, it having been so construed by the highest court of that State.

216 Pa. St. 402, affirmed.

THE facts are stated in the opinion.

*Mr. George Calvert Bradshaw* (by special leave), with whom *Mr. William Henry Seward Thomson* and *Mr. Walter V. R. Berry* were on the brief, for plaintiff in error:

The claim of plaintiff in error is based not alone upon the treaty with Italy, but upon the treaty and the Pennsylvania

statute.   The error committed in the Pennsylvania court was by wrongly interpreting the meaning of this treaty and its effect upon the Pennsylvania law.   *Deni* v. *Penna. R. R.*, 181 Pa. St. 521.

The purpose and effect of fatal accidents acts is to protect human life.  *Stewart* v. *B. & O. R. R. Co.*, 168 U. S. 445; *Mulhall* v. *Fallon,* 176 Massachusetts, 266; *Kellyville Coal Co.* v. *Petraytis,* 195 Illinois, 217; *Cleveland, C. C. & St. L. Ry. Co.* v. *Osgood,* 73 N. E. Rep. 285, 286; *Trota* v. *Johnston,* 28 Ky. Law Rep. 853.   This being so, the giving to the wife or heirs of the deceased an action to recover damages for his wrongful death is a plain, ordinary and efficacious means of protecting and securing his life from negligence.   He cannot sue if killed, but his heirs can; and the value of his life can be measured by his earning power, and the defendant compelled to pay accordingly. It makes no difference to the negligent defendant who sues, or upon what theory the action is maintained.   It must pay for its negligence, and the fact that the action exists is the cause compelling the defendant to exercise care and use every means possible to prevent accidents.

Under Article 3 of the treaty with Italy, all the remedies known to the law by which security and protection are afforded to the persons of Americans are, by force of this article of the treaty, intended to be granted to Italian subjects.

The action for death, while it may be a new right of action in legal theory and not a survival of the right which existed in the husband, is but a substitute for his action and is founded upon the injury done to him, and cannot be maintained except as a substitute for his right of action; nor can it be maintained unless it can be shown that there has been a wrong and injury committed against the deceased.   The widow in her action brings but a substitute for the right of action which would have belonged to her husband and did belong to her husband before his decease.  ·He may settle or prosecute his claim to judgment, and if so, she has no action.   It is only where there has been no reparation made for the wrong to the husband himself, that the ·

widow has any standing to maintain her action; and the Penn-sylvania courts have distinctly repudiated the idea that the widow can maintain an action where the husband has released or settled his claim. *Hill* v. *Pennsylvania Railroad*, 178 Pa. St. 227; *Northern Pacific R. R. Co.* v. *Adams*, 192 U. S. 440.

The right of free access to the courts, as granted by Article 23 of this treaty, means, among other things, the right to maintain actions at law in the same way as citizens.

*Mr. Johns McCleave*, with whom *Mr. John S. Wendt* was on the brief, for defendant in error:

Fixed and received construction of the statute laws of a State by its own courts, constitute a part of such statutory law. *Green* v. *Neale*, 6 Pet. 297; *Bank* v. *Knopp*, 16 How. 391.

The Federal courts will respect state court decisions and will regard them as conclusive in all cases upon the construction of their own constitution and laws. *Brown* v. *Runnells*, 5 How. 139; *Bucher* v. *Railroad Co.*, 125 U. S. 583; *Garnley* v. *Clark*, 134 U. S. 348.

The right to recover for injury to the person resulting in death is of very recent origin and depends wholly upon statutes of the different States. The questions growing out of these statutes are new, and many of them unsettled. Each state court will construe its own statute on the subject and differences are to be expected. *Dennick* v. *Railroad Company*, 103 U. S. 11; *Zeiger* v. *Penna. R. R. Co.*, 151 Fed. Rep. 348; *Fulko* v. *Schuylkill Stone Co.*, 163 Fed. Rep. 124.

The treaty between the United States and the Kingdom of Italy does not amend or alter the statutes of Pennsylvania, so as to give a non-resident alien a right of action for the death of a relative under such statutes.

In Pennsylvania, no right of action has been given to Carmine Maiorano to recover damages for his own death. If one is injured and brings suit to recover for the injury in his lifetime, and subsequently dies as a result of the injury, it is true the right of action survives in the name of the administrator of

the decedent by virtue of § 18, of the act of April 15, 1851; but where death results from the injury before any suit is brought, the right of action of the injured man dies with him, and does not survive to his administrator or other personal representative. In such case the right of action is given by the act of April 26, 1855, to the persons therein enumerated to recover the pecuniary value *to them* of the life that has been taken away. The action is not for the injury to the dead man, but it is to restore compensation for his death to those who were pecuniarily interested in the continuance of the life. It is a new and distinct right of action created by the statute, and vested in the parties named by force of the statute, and does not come to them by way of succession or inheritance from the dead man, because the dead man had no such right. *Pennsylvania R. R. Co.* v. *Zebe,* 33 Pa. St. 318, 329; *Fink* v. *Garman,* 40 Pa. St. 95; *Books* v. *Borough of Danville,* 95 Pa. St. 158, 166; *Chambers* v. *B. & O. R. R. Co.,* 207 U. S. 142. See also: *Pennsylvania R. R. Co.* v. *Henderson,* 51 Pa. St. 315, 322; *Birch* v. *Railroad Company,* 165 Pa. St. 339, 345; *McCafferty* v. *Railroad Co.,* 193 Pa. St. 339, 345.

Punishment of the wrong-doer is not the object of the act, but restoration to the widow and children of the means of support, of which the wrong-doer has deprived them, in taking away the life of their bread-winner.

Plaintiff can show, therefore, no right existing in her under the statutes of Pennsylvania, and never being a sojourner or resident in the United States, or any part thereof, she is clealy outside of the terms of the treaty between the Kingdom of Italy and the United States.

MR. JUSTICE MOODY delivered the opinion of the court.

The husband of the plaintiff in error was killed while a passenger on a train by the negligence of the defendant. The death occurred within the State of Pennsylvania, and this action was brought in a court of that State to recover damages for it.

The plaintiff was a resident of Italy and a subject of the King of Italy. By the statutory law of the State of Pennsylvania (Act of April 15, 1851, P. L. 669, pars. 18 and 19, as amended by the Act of April 26, 1855, P. L. 309, par. 1), the right to recover damages for death occasioned by unlawful violence or negligence is in certain cases conferred upon the husband, wife, children or parents of the person killed. By its literal terms the benefits of the statute are extended to all such surviving relatives, irrespective of their condition. It has, however, been held by the Supreme Court of Pennsylvania, in the case of *Deni* v. *Pennsylvania R. R. Co.*, 181 Pa. St. 525, as well as in the case at bar, that this statute does not give to relatives of the deceased, who are non-resident aliens, the right of action therein provided for. There is nothing in this case to take it out of the general rule that the construction of a state statute by the highest court of the State must be accepted by this court. It is, therefore, not material that similar statutes have been differently construed, as, for instance, in *Mulhall* v. *Fallon*, 176 Massachusetts, 266, and *Kellyville Coal Co.* v. *Petraytis*, 195 Illinois, 217.

The plaintiff rests her right to recover not upon this statute alone, but upon certain provisions of a treaty between the United States and the King of Italy, ratifications of which were exchanged on November 18, 1871. 17 Stat. 845. She asserts that the effect of the treaty was to confer upon the plaintiff the same right to recover damages for the death of her husband that she would have enjoyed by the statute of the State of Pennsylvania if she had been a resident and citizen of that State. The contention of the plaintiff in this respect was denied by the trial court, which granted a judgment of nonsuit, which was affirmed by the Supreme Court of the State, and is now here on writ of error. The only question for our decision is whether a proper interpretation and effect were allowed to the treaty.

We do not deem it necessary to consider the constitutional limits of the treaty-making power. A treaty, within those

limits, by the express words of the Constitution, is the supreme law of the land, binding alike National and state courts, and is capable of enforcement, and must be enforced by them in the litigation of private rights. *Ware* v. *Hylton,* 3 Dall. 199; *United States* v. *Schooner Peggy,* 1 Cr. 103, 110; *Foster* v. *Neilson,* 2 Pet. 253, 314; *Hauenstein* v. *Lynham,* 100 U. S. 483; per Mr. Justice Miller, in *Head-money Cases,* 112 U. S. 580, 598, quoted with approval by Mr. Chief-Justice Fuller in *In re Cooper,* 143 U. S. 472, 501; *United States* v. *Rauscher,* 119 U. S. 407, 418; *Geofroy* v. *Riggs,* 133 U. S. 258.

We put our decision upon the words of the treaty. By a fair interpretation of them, did they directly confer upon the plaintiff the right which she seeks to maintain? We are of the opinion that they did not.

Three articles only are relied on as material. They are:

### Article 2.

"The citizens of each of the high contracting parties shall have liberty to travel in the States and Territories of the other, to carry on trade, wholesale and retail, to hire and occupy houses and warehouses, to employ agents of their choice, and generally to do anything incident to, or necessary for trade, upon the same terms as the natives of the country, submitting themselves to the laws there established."

### Article 3.

"The citizens of each of the high contracting parties shall receive, in the States and Territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are, or shall be, granted to the natives, on their submitting themselves to the conditions imposed upon the natives."

### Article 23.

"The citizens of either party shall have free access to the courts of justice, in order to maintain and defend their own rights, without any other conditions, restrictions, or taxes than.

VOL. CCXIII—18

such as are imposed upon the natives. They shall, therefore, be free to employ, in defense of their rights, such advocates, solicitors, notaries, agents and factors as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals in all cases which may concern them, and, likewise, at the taking of all examinations and evidences which may be exhibited in the said trials."

Article 23 bestows upon citizens of either power, whether resident or non-resident, free access to the courts, "in order to maintain and defend their own rights," with the ancillary privileges of suitors. This article does not define substantive rights, but leaves them to be ascertained by the law governing the courts and administered and enforced in them.

Articles 2 and 3 deal with the rights of the citizens of one party sojourning in the territory of the other. There seems to be nothing pertinent to the case in Article 2. But special stress is laid upon Article 3, which stipulates for the citizens of each, in the territory of the other, equality with the natives of rights and privileges in respect of protection and security of person and property. It cannot be contended that protection and security for the person or property of the plaintiff herself have been withheld from her in the territory of the United States, because neither she nor her property has ever been within that territory. She herself, therefore, is entirely outside the scope of the article. The argument, however, is that if the right of action for her husband's death is denied to her, that he, the husband, has not enjoyed the equality of protection and security for his person which this article of the treaty assures to him. It is said that if compensation for his death is withheld from his surviving relatives, a motive for caring for his safety is removed, the chance of his death by unlawful violence or negligence is increased, and thereby the protection and security of his person are materially diminished. The conclusion is drawn that a full compliance with the treaty demands that, for his protection and security, this action by his surviving

relative should lie. The argument is not without force. Doubtless one reason which has induced legislators to give to surviving relatives an action for death has been the hope that care for life would be stimulated. This thought was dwelt upon in *Mulhall* v. *Fallon, supra,* in considering a statute which made the amount recoverable dependent upon the degree of culpability of the negligent person. Another reason for such legislation, quite as potent, was the desire to secure compensation to those who might be supposed to suffer directly and materially by the death. This thought seems to have been uppermost in Pennsylvania, according to the courts of that State. See *Chambers* v. *B. & O. R. R. Co.,* 207 U. S. 142, and cases cited. Without dwelling further upon the purpose and effect of legislation of this kind, and assuming that both might be calculated in some degree to increase the protection and security of persons who may be exposed to dangers, we are of opinion that the protection and security thus afforded are so indirect and remote that the contracting powers cannot fairly be thought to have had them in contemplation.

If an Italian subject, sojourning in this country, is himself given all the direct protection and security afforded by the laws to our own people, including all rights of actions for himself or his personal representatives to safeguard the protection, and security, the treaty is fully complied with, without going further and giving to his non-resident alien relatives a right of action for damages for his death, although such action is afforded to native resident relatives, and although the existence of such an action may indirectly promote his safety.

*Judgment affirmed.*