BELMA ANTONINA FRASCA *vs.* THE CITY COAL COMPANY
ET AL.

First Judicial District, Hartford, January Term, 1922.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

While treaties between this and foreign countries are the supreme law
of the land (U. S. Const., Art. 6), their construction and appli-
cation, like any other laws, are to be determined by the courts.

General Statutes, § 5350, declares that "alien dependents" shall
receive one half the compensation indicated in chapter 284, unless
they are residents of the United States or its dependencies, or of
Canada; and the "Treaty of Commerce and Navigation" of 1871
between this country and Italy, including the amendment of 1913,
here shown in italics, provides (Art. 3) that "the citizens of each
of the high contracting parties shall receive, in the States and
territories of the other, the most constant security and protection
for their persons and property *and for their rights, including that
form of protection granted by any State or national law which es-
tablishes a civil responsibility for injuries or for death caused by negli-
gence or fault and gives to relatives or heirs of the injured party a right
of action, which right shall not be restricted on account of the national-
ity of said relatives or heirs;* and shall enjoy in this respect the same
rights and privileges as are or shall be granted to nationals, pro-
vided that they submit themselves to the conditions imposed on
the latter." *Held:*—

1. That this treaty provision dealt with the rights of the citizens of the
respective countries while sojourning in the other's territory; and
therefore did not apply to a subject of Italy who resided there and,
so far as appeared, had never been in this country at all.

2. That even if this Article of the treaty could be regarded as applicable
to others than sojourners, it did not forbid a discrimination in the
amount of compensation which was based not on nationality but
solely upon residence; and that inasmuch as our Compensation
Act made no distinction whatever between our own citizens and
aliens resident here, it did not violate article three of the treaty,
upon which the plaintiff rested her claim for the maximum amount
of compensation.

An alien dependent who resides in a foreign country may reasonably
be regarded by the legislature with less favor than one who resides
here subject to our laws and conditions of life.

The case of *Vietti* v. *Mackie Fuel Co.*, 109 Kan. 179, explained and
distinguished.

Argued January 5th—decided February 21st, 1922.

APPEAL from an award of the Compensation Commissioner of the first district, under the Workmen's Compensation Act, taken by the plaintiff to and reserved by the Superior Court in Hartford County (*Avery, J.*) for the advice of this court. *Judgment advised for the defendant.*

The Compensation Commissioner found that on June 28th, 1921, both the plaintiff's husband and the defendant were subject to the provisions of Part B of the Compensation Act; that on that day and for more than twenty-six weeks prior thereto a contract of employment existed between the plaintiff's husband and the defendant; that the plaintiff was totally dependent upon her husband within the meaning of the Act; that on June 28th, 1921, her husband died from an injury which arose out of and in the course of his employment by the defendant; that his average weekly wage, computed in accordance with the terms of the Act, was $27.71; and that the plaintiff was a resident and citizen of the Kingdom of Italy.

The plaintiff claimed that under the terms of a treaty between the United States and Italy made in 1871 (17 U. S. Stats. at Large, 845), and an amendment thereof proclaimed July 3d, 1913 (38 U. S. Stats. at Large, 1669), the provision of § 5350 of the General Statutes of this State, which limits the compensation to be paid to alien dependents to half the amounts indicated in the Act unless such dependents are residents of the United States or its dependencies, or of Canada, was not applicable to her, because she was a resident and citizen of Italy; and claimed that because of her nationality she should be paid compensation at the rate of one half of her husband's average weekly earnings. These claims the Commissioner overruled, and awarded to her only one half of one half of the average weekly earnings of the deceased. From this

award the plaintiff appealed to the Superior Court, which reserved the cause for the advice of this court.

*Ralph O. Wells,* for the plaintiff.

*A. Storrs Campbell,* for the defendants.

BURPEE, J.   The Workmen's Compensation Act of this State defines an employee as "any person who has entered into or works under any contract of service or apprenticeship with an employer," not including an outworker, a casual worker, or a member of the employer's family dwelling in his house.   General Statutes, § 5388.   This definition plainly includes every alien of any nationality.   No person is compelled to submit to the provisions of this Act.   *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 147, 93 Atl. 245.   But all contracts of employment, except those including less than five employees, "shall be conclusively presumed to include a mutual agreement between employer and employee to accept part B" of the Act "and become bound thereby," unless either party shall indicate his refusal to accept by written stipulation in the contract or by notice prescribed by the statute. General Statutes, § 5342.   When the employer and employee shall have accepted part B of the Act, the employer shall be liable to pay, on account of injury or death resulting from injury sustained by an employee arising out of and in the course of his employment, only compensation in accordance with a scale provided in the Act; and the employer and employee mutually renounce and waive all other rights and claims not given and included in the scale.   General Statutes, § 5341.   In that scale it is prescribed that there shall be paid on account of death, to those wholly dependent upon the deceased employee at the time of

his injury, a weekly compensation equal to half of the average weekly earnings of the deceased at the time of his injury. General Statutes, § 5349. Among "those wholly dependent " is conclusively presumed to be a wife living with her husband at the time of his injury or regularly receiving support from him; but only half the compensation indicated for dependents shall be paid to "alien dependents " unless they are residents of the United States or its dependencies, or of Canada. General Statutes, § 5350.

These were the provisions of our Compensation Act in effect when the plaintiff's husband and the defendant entered into their contract of employment. They became a part of the contract, and the parties were bound by them. *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 147, 93 Atl. 245; *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 371, 94 Atl. 372; General Statutes, § 5342. To them must be given the same force and effect that would be given to the same provisions if they had been specifically written into a contract specially prepared, accepted and signed by the parties without reference to the Act.

We understand that the plaintiff concedes that this is true respecting the rights and claims which her husband might have had and made upon his employer if he had survived his injury; but she contends that the compensation to be paid to her as his dependent widow cannot be limited to one half the amount that she would receive if she were a resident of the United States or Canada. This contention is urged in spite of, and indeed because of, the fact that she is a citizen and resident of Italy. It rests upon her interpretation of the meaning and effect of the treaty between that Kingdom and the United States as amended in 1913. Hence we are called on to determine what is the true meaning and effect of this treaty as it stands, so far

as it bears upon our Compensation Act. For this purpose it is unnecessary to consider the treaty-making power of the United States government, or the obligations of treaties when made. They are a part of "the supreme Law of the Land; and the Judges in every State shall be bound thereby." Const. of the U. S., Article VI. But their construction and application, whenever necessary, are, as with any other law, to be considered and determined by the courts. To these questions we first give our attention in the present case.

This treaty was made in 1871. Its object is indicated in its title: "Treaty of Commerce and Navigation." The material articles are as follows:—

### Article II.

"The citizens of each of the high contracting parties shall have liberty to travel in the States and territories of the other, to carry on trade, . . . and generally to do anything incident to or necessary for trade, upon the same terms as the natives of the country, submitting themselves to the laws there established."

### Article III.

"The citizens of each of the high contracting parties shall receive, in the States and territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives, on their submitting themselves to the conditions imposed upon the natives."

The United States Supreme Court has held that by fair construction these articles did not confer upon relatives of a deceased employee who are aliens resident in Italy, a right of action for his death, although such a right is given by a statute of a State to native resident relatives. *Maiorano* v. *Baltimore & Ohio R. Co.*, 213 U. S. 268, 29 Sup. Ct. 424. It is said on page

Frasca *v.* City Coal Co.

274: "Articles 2 and 3 deal with the rights of the citizens of one party sojourning in the territory of the other. There seems to be nothing pertinent to the case in Article 2. But special stress is laid upon Article 3, which stipulates for the citizens of each, in the territory of the other, equality with the natives of rights and privileges in respect of protection and security of person and property. It cannot be contended that protection and security for the person and property of the plaintiff herself have been withheld from her in the territory of the United States, because neither she nor her property has ever been within that territory. She herself, therefore, is entirely outside the scope of the articles."

This decision was handed down April 5th, 1909. Apparently because of the construction thus given to the terms of the treaty of 1871, its high contracting parties, expressly stating that they desired "to define more accurately the rights of their respective citizens in the territories of the other," agreed that Article III of that treaty should be replaced by the following provision: "The citizens of each of the High Contracting Parties shall receive in the States and Territories of the other the most constant security and protection for their persons and property and for their rights, including that form of protection granted by any State or national law which establishes a civil responsibility for injuries or for death caused by negligence or fault and gives to relatives or heirs of the injured party a right of action, which right shall not be restricted on account of the nationality of said relatives or heirs; and shall enjoy in this respect the same rights and privileges as are or shall be granted to nationals, provided that they submit themselves to the conditions imposed on the latter." 38 U. S. Stats. at Large, 1669.

This substituted provision, expressly intended "to

define more accurately the rights " of Italian citizens in the territory of the United States, does not mention or refer to Italian citizens in Italy.  By the original treaty an Italian sojourning in the United States should receive all the direct protection for person and property secured by our laws to our own people, including all rights of action for himself or his personal representatives.  Among these, of course, was the right of action granted by our laws to a workman for injuries caused by negligence or fault of his employer. In the article substituted in 1913, the same right was extended in case of the death of the injured person to his relatives or heirs, and this is the right referred to in this new article by the words, "which right shall not be restricted on account of the nationality of said relatives or heirs."  This prohibition does not mention any restriction on account of nonresidence.   Nor are dependents included in its terms; for relatives and heirs are not necessarily dependents, and the use of the former words indicates plainly that the parties to the amendment of 1913 had in mind the connection of kinship rather than of dependency.  The title of the original treaty and the language used in Article I, which have not been changed, and the expressed purpose and the terms of the amendment of 1913, seem to indicate clearly that the later provision does not and was not intended to affect the rights of Italian subjects not residing in this country.  And we find nothing in the terms of the original treaty or of the substituted provision, which applies to the privileges or rights granted to an alien dependent of a deceased Italian workman by the Workmen's Compensation Act.

We concede that these treaties should be as broadly construed as they reasonably may be construed.  But if we could admit that their provisions are applicable to the amount of compensation to be paid to this non-

resident Italian claimant, it would not follow that she should receive the same amount as a resident of the United States or Canada. At most, she may enjoy only the same rights and privileges as are granted to our dependent nationals. Exactly those rights and privileges are granted to her by the clause of our Act which is in question. It limits the compensation to be paid to "alien dependents " unless they are also residents; that is, to dependents who themselves are non-resident aliens. Whether the workman on whom they were dependent was an alien or a citizen, does not concern this limitation. If he was a citizen, his non-resident alien dependents may be awarded only one half the compensation indicated in the Act for his resident dependents; if he was an alien, his nonresident alien dependents will be treated in the same manner. The restriction affects the alien dependents of nationals and Italians alike. There is no discrimination unfavorable to the subjects of Italy, or of any foreign country, because of nationality. The resident alien dependents of any nationality are not affected. The alien dependent who resides in a foreign country might reasonably be regarded by the legislature less favorably than the alien who lives in our country, subject to our laws and conditions of living, and dependent for protection and perhaps support upon our institutions and our people.

A State has a right to debar aliens from holding shares in her corporations, or to admit them to that privilege only on such terms as she may prescribe. *State* v. *Travelers Ins. Co.*, 70 Conn. 590, 600, 40 Atl. 465. So, too, it is within its power to withhold any compensation from aliens. "The power of the legislature . . . to declare to whom and in what amount compensation shall be made, cannot be doubted." *Gregutis* v. *Waclark Wire Works*, 86 N. J. L. 610, 615,

92 Atl. 354; *Victor Chemical Works* v. *Industrial Board,* 274 Ill. 11, 19, 113 N. E. 173. Such a restriction was not in conflict with the treaty of 1871 between the United States and Italy. *De Biasi* v. *Normandy Water Co.,* 228 Fed. Rep. 234; *Bjolstad* v. *Pacific Coast S. S. Co.,* 244 Fed. Rep. 634; *Casella* v. *McCormick,* 180 N. Y. App. Div. 94, 167 N. Y. Supp. 564. The amendment made in 1913, with the declared and specific purpose "to define more accurately the rights of their respective citizens in the territories of the other," expressly included the formerly withheld right of action for death caused by negligence or fault which is granted by our laws to the relatives or heirs of the injured person, and declared that that right shall not be restricted on account of their nationality. It did not affect other rights of Italian subjects. They remain the same as those which have been or shall be granted to our nationals. Relatives and heirs, as such, are not mentioned in our Compensation Act; but whenever relatives or heirs are also dependents, their rights and privileges as dependents have not been restricted by that Act on account of their nationality, nor affected in any way differently from those of our native citizens. In this connection it is worthy of consideration that this provision is peculiar to our Act, which was passed May 29th, 1913, and that the treaty with Italy had previously been prepared and concluded on February 25th, 1913. Therefore it would seem to be reasonable to assume that this provision was not in the minds and purpose of the high contracting parties or included in the meaning and terms of the treaty.

Counsel have been able to point to but one decision concerning this subject made by a court of last resort in this country. *Vietti* v. *Mackie Fuel Co.,* 109 Kan. 179, 197 Pac. 881. This decision is not applicable to our Compensation Act, or to the facts in this case.

The Kansas statute provides "that if the workman does not leave any dependents citizens of and residing at the time of the accident and injury in the United States or the Dominion of Canada, the amount of compensation shall not exceed in any case the sum of $750." The Kansas Supreme Court held that the legislature "made a clear discrimination on grounds of nationality and residence," and for that reason the statute was repugnant to the letter and intent of the treaty with Italy as amended in 1913. Moreover, the dependents in that case, while natives of Italy, were unnaturalized residents of Kansas. In view of these conditions, the court said: "It will be observed that the treaty plainly purports to place citizens of the two nations upon an equality in respect to their persons and property rights where citizens of one country are domiciled in the other, and there is also a stipulation that the relatives and heirs of an injured party shall be given a right of action which shall not be restricted on account of the nationality of such relatives or heirs, and there is the further added condition that aliens, who submit themselves to the conditions imposed on nationals, shall enjoy the same rights and privileges as nationals. Under these provisions, the citizens of Italy who may be in this country, and who are not enemies of the country, are entitled to the same rights and privileges in respect to their persons and property as are enjoyed by our own citizens."

These conclusions are certainly not inconsistent with those we have reached.

The Superior Court is advised that there was no error in the award of the Compensation Commissioner.

In this opinion the other judges concurred.