[S. F. No. 12491. In Bank.—October 10, 1927.]

In the Matter of the Estate of CLAUS ALBERT CLAUSEN, Deceased. FIN LUND, Consul of Denmark at San Francisco, Appellant, v. OLAF HANSEN, Executor, Respondent.

[1] TREATIES — UNITED STATES AND DENMARK — CONSTRUCTION. — The treaty between the United States of America and Denmark ratified August 10, 1826 (8 U. S. Stats. 340), by its express provisions is strictly a treaty of commerce and navigation.

[2] ID.—ESTATES OF DECEASED PERSONS—RECEIPT OF PROPERTY OF FOREIGN HEIRS BY CONSUL.—Under the treaty between the United States and Denmark, a consul of Denmark has not the right to require payment to him of the distributive shares of subjects of Denmark in the estate of a deceased person being probated in this country, for transmission to such subjects.

[3] ID.—RIGHTS AND PRIVILEGES OF CONSULS OF FOREIGN NATIONS.— The right of a consul of a foreign nation to require the distribution and payment to him of the distributive shares of the subjects of his nation in the estates of deceased persons being administered in this country, for transmission to said heirs, is not a mere right, privilege, or immunity ordinarily accorded to consular or other representatives of a foreign power which may be said to naturally come within the purview of the comity of nations, but it is obviously something more.

---

(1) 38 Cyc., p. 967, n. 62, p. 971, n. 25.  (2) 38 Cyc., p. 966, n. 60. (3) 38 Cyc., p. 970, n. 5.

APPEAL from an order of the Superior Court of Marin County, denying payment to the consul of a foreign country of distributive shares of subjects of such country in the estate of a deceased person. Edward I. Butler, Judge. Affirmed.

The facts are stated in the opinion of the court.

Eric Lyders for Appellant.

A. P. Dessouslavy for Respondent.

SEAWELL, J.—Claus Albert Clausen died testate April 3, 1925, a resident of the county of Marin, this state. He was unmarried and left neither children, nor father, nor mother surviving him. He left as his sole heirs at law seven brothers, three sisters, and four children of a deceased sister and five children of a deceased brother. By his will he bequeathed and devised to his brothers and sisters and to the children or issue of any deceased brother or sister (such children or issue to take by right of representation) all property of which he might die seised or possessed. The heirs whose distributive shares are the concern of this proceeding are the children of said deceased brother and sister and are residents of the Kingdom of Denmark. The executor of said estate, having brought the proceeding to the stage where it was proper to make partial distribution of the same, petitioned the court to make a decree to that effect, which was accordingly made and entered by the court, whereupon Fin Lund, as the accredited consul of Denmark, whose consular district embraced the whole state of Cali-

fornia, filed a petition wherein he prayed that the executor of said estate be ordered to pay the distributive shares of said foreign heirs to him, to be by him remitted through the agency of the government of Denmark to the proper distributees, and that the petitioner be directed to furnish evidence of such remission. A general demurrer to the petition was sustained and an order subsequently made and entered denying said petition. It is from this order that the appeal was taken. Said consul claims by authority of his official station as consul of Denmark the right to receive and receipt for the shares of said estate ordered by said decree to be distributed to the children of said sister and brother of decedent, respectively, all of whom are residents of and subjects of the King of Denmark. This right is asserted under and by virtue of the provisions of the treaty existing between the United States of America and the King of Denmark, ratified August 10, 1826, and proclaimed by the President of the United States October 14, 1826 (8 U. S. Stats. 340). Said treaty is entitled ''General Convention of Friendship, Commerce, and Navigation,'' and it has not been modified during its one hundred years of existence in any material respect. [1] Said treaty by its express provisions is strictly a treaty of commerce and navigation. Those are the only subjects treated of therein. Every article of said treaty deals with commerce and navigation between the two nations and does not purport to deal with any other subjects. The preamble, or introductory paragraph, sets out very clearly and specifically the subject matter of said treaty in the following language:

''The United States of America and His Majesty the King of Denmark, being desirous to make firm and permanent the peace and friendship which happily prevail between the two nations, and to extend the commercial relations which subsist between their respective territories and people, have agreed to fix, in a manner clear and positive, the rules which shall in future be observed between the one and the other party, by means of a general convention of friendship, commerce and navigation. . . . ''

Because the ''most favored nation'' clause appears in article VIII of said treaty, which is regulatory of commercial and navigation relations between the two nations, it is claimed that whatever treaty rights or privileges any

other nation may have secured to itself by reason of its treaty agreement with the United States are, *ex gratia,* it would appear, extended to all other nations though not parties to said treaty agreements, provided the treaties with said nations which are strangers to said treaty agreements contain the "most favored nation" clause. The article of the Danish treaty which is relied upon as conferring upon the consul of Denmark the right to receive and receipt for the distributive shares of Danish heirs, because such a right is given to a consular officer of Germany in express terms, provides:

"Article VIII.

"To make more effectual the protection which the United States and His Danish Majesty shall afford in future to the navigation and commerce of their respective citizens and subjects, they agree mutually to receive and admit Consuls and Vice-Consuls in all the ports open to foreign commerce, who shall enjoy in them all the rights, privileges and immunities of the Consuls and Vice-Consuls of the most favored nation, each contracting party, however, remaining at liberty to except those ports and places in which the admission and residence of such Consuls may not seem convenient."

[2] By the language of the article above set out it is manifest that the rights, privileges, and immunities guaranteed to consuls are relative to navigation and commerce, granting to the consuls of each contracting nation the rights, privileges, and immunities that are germane to and tend to assist or promote commerce and navigation, and such other rights and privileges as friendly nations accord to one another. Said Danish treaty contains no words equivalent to the language expressly inserted in the German treaty which appellant seeks to adopt by reference. That treaty provides:

"A consular officer of either high contracting party may in behalf of his non-resident countrymen receipt for their distributive shares derived from estates in process of probate or accruing under provisions of so-called workmen's compensation laws or other like statutes provided he remit any funds so received through the appropriate agencies of his government to the proper distributees, and provided further that he furnish to the authority or agency making distribution through him reasonable evidence of such remis-

sion." (44 U. S. Stats., Part 3, p. 2132, U. S. Treaty Series No. 725.)

Our treaty with Denmark was ratified almost a century before the right contended for by appellant was given to any nation or inserted in any treaty to which this nation was a party. Obviously it was not within the contemplation of either of the powers in our treaty with the King of Denmark to confer upon the consul or vice-consul of Denmark a right not then given to other nations. Neither is there anything in said Danish treaty that would justify the construction sought by appellant to be placed upon it. In fact, it does not contain the provisions found in numerous modern treaties made by this nation with other nations to the effect that future privileges and immunities accorded to the consuls of the most favored nations will inure to the benefit of Denmark. It may, however, by a reasonably liberal construction, be held that any privileges, rights, or immunities granted to consuls of other nations, if within the scope of the subject dealt with in our treaty with Denmark, would also inure to the benefit of the Danish consuls or other representatives.

[3] The right asserted by appellant is not a mere right, privilege, or immunity ordinarily accorded to consular or other representatives of a foreign power which may be said to naturally come within the purview of the comity of nations. It is obviously something more. Whether or no either of the treaty-making powers, the United States or Denmark, intended to confer upon its consular officers the authority claimed by appellant nowhere appears in the treaty, and an American court might properly be chargeable with unwarranted presumption should it attempt, in the absence of language plainly expressing or necessarily implying such intent, to confer upon the consulate of foreign nations powers or privileges in important matters not conferred upon them by the nations which they represent. In other words, the policy of imposing upon consuls and other representatives the duty of receiving and receipting for property transmissible to subjects of the nation they represent from foreign jurisdictions is a matter of high concern to the subjects and the ruling powers with which no other nation may properly interfere. If the Kingdom of Denmark desires to depart from the long-established practice of

transmitting to its subjects their distributable shares of estates due them from foreign lands, it is most reasonable to assume that it would negotiate a treaty to that effect or express its desire in some other official form. It is to be kept in mind that this nation also is charged with a duty and obligation in the premises, for the discharge of which duty its officers and agents can be held to strict accountability under the law. Applying the well-recognized rule that treaties are subject to the same rules of interpretation as other documents, and aided by the further consideration that those nations which have deemed it wise to change the rule of transmitting property acquired from estates in foreign lands to their subjects to whom distribution is ordered have done so by express treaty provisions, we conclude that inasmuch as the treaty made between the United States and the King of Denmark contains no such provision or article, the appellant is without authority to maintain this proceeding.

The order appealed from is affirmed.

Waste, C. J., Richards, J., Shenk, J., Curtis, J., and Langdon, J., concurred.