[No. 24720. Department One. January 22, 1934.]

SOFIA LUKICH, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General, John W. Hanna, Assistant,* and *Dorothee Scarbrough,* for appellant.

*C. T. Haas* and *Peter A. Schwabe,* for respondent.

BEALS, C. J.—Joe Lukich and plaintiff, Sofia Lukich, citizens of the kingdom of Yugoslavia, intermarried in that country, and remained husband and wife up to the time of Joe Lukich's death. Sometime prior to

[1]Reported in 29 P. (2d) 388.

1929, Joe Lukich came to the state of Washington, where, during the month of May, 1929, he was killed in an industrial accident while subject to the workmen's compensation act as then in effect. Mrs. Lukich has at all times resided in Yugoslavia and is a citizen of that country.

It is admitted that Mrs. Lukich is entitled to benefits under the workmen's compensation act, the sole question to be determined being whether or not, under Rem. Rev. Stat., § 7684, her compensation shall be reduced to one-half that which she would receive were her status other than that of a nonresident alien. The pertinent portion of the section referred to reads as follows:

"Except as otherwise provided by treaty, whenever under the provisions of this act, compensation is payable to a beneficiary or dependent who is an alien not residing in the United States, the department shall pay fifty per centum of the compensation herein otherwise provided to such beneficiary or dependent."

After the death of Mr. Lukich, the supervisor of the department of labor and industries decided that Mrs. Lukich, being an alien not residing in the United States, was entitled to receive only fifty per cent of the compensation provided by the statute, and this decision was, on appeal, sustained by order of the joint board of the department. From this order, Mrs. Lukich appealed to the superior court, which reversed the order of the joint board and entered judgment in plaintiff's favor, awarding her the full compensation provided by the act; from which judgment the department appeals.

The cause was submitted to the superior court on an agreed statement of facts, respondent making no denial of the fact that she is a nonresident alien.

In the opening phrase of Rem. Rev. Stat., § 7684, above quoted, the paramount authority of treaties be-

tween the United States and other nations is recognized. December 27, 1882, a "Convention of Commerce and Navigation" between the kingdom of Serbia and the United States, which had theretofore been negotiated, was proclaimed. It is conceded that the present kingdom of Yugoslavia has replaced and absorbed the kingdom of Serbia, and that the convention above referred to is now in full force and effect between Yugoslavia and the United States. The convention is found in 2 Malloy's Treaties, Conventions, International Acts, Protocols and Agreements between the United States of America and Other Powers, 1776-1909, page 1613. and article 1 thereof reads as follows:

"There shall be reciprocally full and entire liberty of commerce and navigation between the citizens and subjects of the two high contracting powers, who shall be at liberty to establish themselves freely in each other's territory.

"Citizens of the United States in Serbia and Serbian subjects in the United States shall reciprocally, on conforming to the laws of the country, be at liberty freely to enter, travel or reside in any part of the respective territories, to carry on their business, and shall enjoy in this respect for their persons and property the same protection as that enjoyed by natives or by the subjects of the most favored nation.

"They shall be at liberty to exercise their industry and trade, both by wholesale and by retail, in the whole extent of both territories, without being subjected as to their persons or property, or with regard to the exercise of their trade or business, to any taxes, whether general or local, or to any imposts or conditions of any kind other or more onerous than those which are or may be imposed upon natives or upon the subjects of the most favored nation.

"In like manner in all that relates to local taxes, customs, formalities, brokerage, patterns or samples introduced by commercial travelers, and all other matters connected with trade, citizens of the United States in Serbia and Serbian subjects in the United States

shall enjoy the treatment of the most favored nation, and all the rights, privileges, exemptions and immunities of any kind enjoyed with respect to commerce and industry by the citizens or subjects of the high contracting parties, or which are or may be hereafter conceded to the subjects of any third power, shall be extended to the citizens or subjects of the other.''

The question here presented turns upon the construction to be given to the convention between the two countries.

It is important to note that article 1 of the convention contains the ''most favored nation'' clause, which provision is well known in international law, and occurs in many treaties which concern the rights of nationals of the respective high contracting parties while residing in the territory of the other. Generally speaking, the effect of this clause is to grant to the nationals of the contracting parties, while within the territorial limits of the other, all rights, privileges and immunities which in the past have been granted by treaty or which may in the future be so granted to the nationals of other nations along the same lines covered in the treaty in question. It follows, then, that nationals of Yugoslavia are entitled to the benefit of the application of the ''most favored nation'' clause of the convention between the United States and Yugoslavia upon which respondent relies, subject to the rules governing the construction of treaties.

It appears that, during the past fifteen years, the United States has entered into treaties with European nations in several of which appears a provision by the terms of which a person occupying the position of respondent here would be entitled to receive the full benefits accruing under the workmen's compensation act of this state without diminution, as provided in the

portion of Rem. Rev. Stat., § 7684, above quoted. So far as we have been able to ascertain, this clause is contained in treaties of "Friendship, Commerce and Consular Rights," and appellant argues that the "most favored nation" clause contained in the agreement between the United States and Yugoslavia, which agreement is entitled a "Convention of Commerce and Navigation," is limited in its effect to agreements between the United States and other nations of similar import, and that its scope is not enlarged by clauses contained in treaties of friendship, commerce and consular rights between the United States and other nations.

The workmen's compensation act is an exercise of the police power of the state. This power, never having been relinquished by the states to the Federal government, remains with the states (12 C. J. 910, § 417), and it will not be held that a treaty infringes upon the complete exercise of this power by the state unless it clearly appears that such a construction is required by the language of the treaty to be construed. It is also true that a treaty should be liberally construed to effectuate its manifest purpose. *In re Stixrud's Estate,* 58 Wash. 339 (348), 109 Pac. 343, 33 L. R. A. (N. S.) 632, Ann. Cas. 1912A, 850.

By the portion of Rem. Rev. Stat., § 7684, above quoted, the paramount authority of treaties between the United States and foreign nations is recognized, so no question of conflict of law is here presented.

The supreme court of the United States has upheld the validity of state statutes denying to nonresident parents the right to receive compensation under workmen's compensation acts in cases where the parents were citizens of Italy and claimed that the state statute was ineffective because of a treaty be-

tween the United States and Italy which contained the following paragraph:

"The citizens of each of the High Contracting Parties shall receive in the States and Territories of the other the most constant security and protection for their persons and property and for their rights, including that form of protection granted by any State or national law which establishes a civil responsibility for injuries or for death caused by negligence or fault and gives to relatives or heirs of the injured party a right of action, which right shall not be restricted on account of the nationality of said relatives or heirs; and shall enjoy in this respect the same rights and privileges as are or shall be granted to nationals, provided that they submit themselves to the conditions imposed on the latter." *Liberato v. Royer,* 270·U. S. 535, 46 Sup. Ct. 373; *Maiorano v. Baltimore & Ohio R. R. Co.,* 213 U. S. 268, 29 Sup. Ct. 424.

Decisions of other courts to the same effect are found in *Madonna v. Wheeling Steel Corporation,* 28 Fed. (2d) 710, and *Frasca v. City Coal Co.,* 97 Conn. 212, 116 Atl. 189.

The agreement between the United States and Yugoslavia is entitled a "Convention of Commerce and Navigation." With the use of the word "convention" we are not concerned. The agreement is, in its effect, a treaty between the sovereign powers, in the agreement itself the word "treaty" is employed, and we give no weight to the use of the word "convention" in connection with the document. Assuming for all purposes in connection with this case that the document is a treaty in the full sense of the word, it, however, expressly refers to, and is limited to matters concerning, commerce and navigation. We find therein no provision which bears the slightest relation to such a question as is here presented. The effect of the "most favored nation" clause is limited to such mat-

ters as are the subject matter of the particular treaty in which the clause is contained.

In the case of *Petersen v. Iowa,* 245 U. S. 170, 38 Sup. Ct. 109, it was held that a statute of Iowa imposing a higher death duty on legacies to nonresident aliens than was chargeable under similar conditions on legacies to residents of Iowa was effective, notwithstanding a treaty between the United States and Denmark which contained, in addition to a favored-nation clause, the following:

"The United States and his Danish Majesty mutually agree, that no higher or other duties, charges, or taxes of any kind, shall be levied in the territories or dominions of either party, upon any personal property, money, or effects, of their respective citizens or subjects, on the removal of the same from their territories or dominions reciprocally, either upon the inheritance of such property, money, or effects, or otherwise, than are or shall be payable in each State, upon the same, when removed by a citizen or subject of such State respectively."

Construing the paragraph quoted, the court held that it was not applicable to the situation presented, which was that of a resident of Iowa disposing by will of her property within that state. In placing this construction upon the treaty, the court considered the context and the manifest intent of the high contracting parties.

The court also held that the favored-nation clause was limited by the terms of the treaty to "commerce and navigation," in connection with which the favored-nation clause was used. In the treaty now under consideration, it is provided that:

"In like manner in all that relates to local taxes, customs, formalities, brokerage, patterns or samples introduced by commercial travelers, and all other matters connected with trade, citizens of the United States

in Serbia and Serbian subjects in the United States shall enjoy the treatment of the most favored nation, and all the rights, privileges, exemptions and immunities of any kind enjoyed with respect to commerce and industry by the citizens or subjects of the high contracting parties, or which are or may be hereafter conceded to the subjects of any third power, shall be extended to the citizens or subjects of the other.'' Article 1.

Considering this clause in connection with the immediate context and the entire treaty now under consideration, we are clearly of the opinion that the treaty refers only to matters of navigation and commerce, trade and industry, and that the favored-nation clause can not be held to bring into the field of operations, and entitle respondent to the benefit of, treaties of a general nature with other nations which manifestly concern matters not within the purview of the high contracting parties in making the treaty under which respondent claims.

In the case of *Duus v. Brown,* 245 U. S. 176, 38 Sup. Ct. 111, the supreme court of the United States, following its decision in the case of *Petersen v. Iowa, supra,* held that the statute of Iowa levying death duties applied to nonresident alien heirs, citizens of Sweden, notwithstanding a treaty between the United States and that country which contained the favored-nation clause, which clause the court in the *Petersen* case had held applicable only ''in respect to commerce and navigation.'' In this connection the cases of *Patsone v. Pennsylvania,* 232 U. S. 138, 34 Sup. Ct. 281, and *Dobrin v. Mallory S. S. Co.,* 298 Fed. 349, are also of interest.

The supreme court of California, in the case of *In re Clausen's Estate,* 202 Cal. 267, 259 Pac. 1094, referred to ''the well-recognized rule that treaties are subject

to the same rules of interpretation as other documents," and held that the "most favored nation" clause contained in the treaty between the United States and Denmark entitled, "General Convention of Friendship, Commerce, and Navigation," did not have the effect of extending the authority of Danish consuls in the United States by vesting them with power conferred by later treaties upon the consuls of other countries.

In the case of *Cornelius v. Seattle,* 123 Wash. 550, 213 Pac. 17, this court held that a subject of the emperor of Japan had no right to municipal employment under a treaty between the United States and Japan by the terms of which Japanese nationals were insured the liberty—

" ' . . . to carry on trade, wholesale and retail . . . and generally to do anything incident to or necessary for trade, upon the same terms as native citizens or subjects, submitting themselves to the laws and regulations there established.' "

It was held that this treaty did not confer the right to engage in public work, and that an ordinance of the city of Seattle restricting the work of garbage collection to citizens of the United States was a valid exercise of the police power of the city.

In connection with the question to be here determined, we have considered the opinion of this court in *In re Stixrud's Estate,* 58 Wash. 339, 109 Pac. 343, 33 L. R. A. (N. S.) 632, Ann. Cas. 1912A, 850, in which a provision of the inheritance tax law of this state to the effect that a greater tax should be collected from sums passing to collateral relatives, being nonresident aliens, was held inoperative as to citizens of Norway, because of the "Treaty of Amity and Commerce" of 1783 between the United States and the then kingdom of Sweden and Norway, together with the subsequent

"Treaty of Commerce and Navigation" of 1827 between the same signatories. Whether or not the opinion of this court above cited is in conflict with the opinions of the supreme court of the United States herein referred to, need not be determined. In any event, we are satisfied that the case is not controlling here.

Respondent relies upon the opinion of the supreme court of Oregon in the case of *Ljubich v. Western Cooperage Co.*, 93 Ore. 633, 184 Pac. 551, in which it was held that a consul of Austria could authorize the institution of an action in the courts of Oregon under a treaty between his country and the United States containing a "most favored nation" clause, which clause the court held brought into operation provisions contained in treaties between the United States and Great Britain and the United States and Sweden. The powers of consuls of the signatories to the Austrian treaty were referred to therein, and by article 15 it was expressly provided that such diplomatic officers should "enjoy in the two countries all the liberties, prerogatives, immunities and privileges granted to functionaries of the same class of the most favored nation." The matter of consular powers having been one of the express subjects of the treaty, it follows that consular powers granted to the representatives of other nations were clearly within the purview of the favored-nation clause. The case is not in point on the question here presented.

We have carefully scrutinized each provision of the treaty between the United States and Serbia upon which respondent relies, and we are unable to find therein anything which covers such a situation as is here presented. The treaty manifestly refers to "commerce and navigation." Its scope is limited to matters in connection therewith. True, the word "industry"

is used, but in the context it clearly appears that this word was employed in connection with commerce and not with labor. Under these circumstances, the "most favored nation" provision of the treaty, while drawing within its purview all matters contained in later treaties germane to the matters of commerce and navigation, does not render Rem. Rev. Stat., § 7684, inapplicable to respondent's claim under the workmen's compensation act.

The judgment appealed from is reversed, with directions to enter judgment in accord with this opinion.

MILLARD, MAIN, MITCHELL, and STEINERT, JJ., concur.