ESTATE OF SHEGA: STATE, Appellant, v. WARNIMONT, Administrator, and others, Respondents.

*January 31—February 27, 1968.*

For the appellant the cause was argued by *Roy G. Mita,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief and oral argument by *Edward T. Berkanovic* of Milwaukee.

HALLOWS, C. J.   The appeal raises basically the question of the sufficiency and the propriety of the proof of heirship.   Joseph Shega was born March 17, 1878, in Tinsko, Austria (now Yugoslavia), and came to the United States, was naturalized, married, divorced, and died without children.   There was testimony by the administrator, Robert E. Warnimont, who had known the decedent for twenty years, that he had no relatives.   On behalf of the respondents, there was offered and allowed in evidence what is designated as a "family tree report"

made in Yugoslavia. Edward T. Berkanovic, attorney for the respondents, also testified.

The first issue is whether the family tree report is admissible in evidence. This report purports to be "From birth, marriage and death records of the family of late Shega domiciled S. Tinsko, Community Smarje near Jelsah, P. R. of Slovenja, F. P. R. of Yugoslavia" and consists of eight columns entitled Name and Surname; Relationship to decedent; Day, month and year of birth; Year of marriage; Day, month and year of death; Occupation; Divorce if any; Remarks. There are 19 persons listed with information in the various columns, including their relationship to the decedent. Beneath the last entry appears "Concluded with cardinal number 19/nineteenth/At Pristava, By Mestinji, July 9, 1966 Recorder: Anton Josti, signed." The authenticity of this signature and of the seal of the Council of the Community Smarje is then acknowledged by the President of the Communal Court at Smarje by Jelsah, his signature and the seal are authenticated by the Secretariat of Justice for the Social Republic of Slovenia and this authentication is in turn legalized by the Secretariat for Foreign Affairs of the SFR Yugoslavia and superlegalized by the Vice Consul of the United States at Belgrade.

The state objected to the admissibility of this document because it did not comply with sec. 891.09 (3), Stats.[1]

---

[1] "891.09 **Record of births, stillbirths, fetal deaths, deaths and marriages.**

". . .

"(3) CERTIFICATES OF FOREIGN BIRTHS, ETC. Official certificates of births, marriages or deaths, issued in foreign countries in which such births, marriages or deaths have occurred, purporting to be founded on books of record and authenticated by the signature of any United States minister, secretary of legation or other diplomatic officer, or by a consul of the United States accredited to or appointed for the foreign country in which such certificates are issued, shall be received as presumptive evidence of the facts in such certificates stated."

It is claimed the report is not an official certificate of the births, marriages or deaths therein stated, does not purport to be of facts found in official books of records, and is not certified by an official custodian of such records. It is true the family tree report is not composed of separate official certificates of each birth, marriage or death therein recited. It purports to be an excerpt of genealogy from records of the Shega family relating to births, marriages and deaths, and includes the relationships to the deceased and in some instances, occupations and other matters.

A family tree report by nature is a collection of entries affecting the relationship of a person or family and for this purpose each item is not usually separately certified as an official certificate. However, the Shega family tree report is defective for the purpose of proving heirship in our courts because it does not purport to state that the facts therein recited are taken from officially recognized records. It states rather "From birth, marriage and death records of the family of the late Shega [etc.]." These might be official public records or they might be private family records. If private family records, there should be some testimony that such records are considered correct and accepted as official in Yugoslavia. We realize that public and official vital statistics are not kept by all foreign countries and are of fairly recent origin in this country. Because of this, sec. 891.09 (2), Stats., recognizes domestic church and doctor's records with limitations. It is urged that we can infer that it is a public document because it is prepared and signed by a recorder, but the evidence does not show what official capacity the recorder has in Yugoslavia. It is claimed the report is a collection under a single certificate of official certificates of births, deaths and marriages. However, the report does not on its face so purport and no evidence so states. We cannot take judicial notice of what constitutes a family tree report

in Yugoslavia. We conclude that the family tree report is not an official certificate of birth, marriage or death contemplated by sec. 891.09 (3), which would entitle it to be received as presumptive evidence of the facts therein stated. Although the report in its present form does not qualify, this section is not exclusive and we must determine if the report might be admissible on other grounds with such probative value less than presumptive value as it can merit.

It is urged the report is entitled to be admitted in evidence as a foreign official document because a treaty containing the "most favored nation" clause exists between the United States and Yugoslavia. This treaty includes a consular convention signed at Belgrade, October 2–14, 1881, and entered into force November 15, 1882.[2] The most favored nation clause gives Yugoslavia the same rights and privileges as to matters in the treaty between the United States and Yugoslavia that are accorded to the United States and other nations in treaties between them. *Lukich v. Department of Labor & Industries* (1934), 176 Wash. 221, 29 Pac. 2d 388, 27A Words and Phrases 345; *Kolovrat v. Oregon* (1961), 366 U. S. 187, 81 Sup. Ct. 922, 6 L. Ed. 2d 218; *Olsen v. Spoya* (1955), 129 Mont. 83, 282 Pac. 2d 452. The treaty in question [3] refers to "official documents of every

---

[2] 22 Stats. 968; T. S. 320; 2 Malloy, 1618; Treaty Provisions Relating to the Competency and Rights of Consular Officers in Relation to the Settlement of Estate, in Force between the United States of America and Foreign Countries, Department of State, Treaty Division, December 31, 1936, page 33.

[3] The treaty in question is with Serbia and provides:

"Such papers [depositions and contracts] and official documents of every kind, whether in the original, in copies or in translation, duly authenticated and legalized by the consuls-general, consuls, vice-consuls and consular agents, and sealed with their official seal, shall be received as legal documents in courts of justice throughout the United States and Serbia." Convention Between The United States and Serbia, Treaty Series No. 320, Article X; 22 Stats. 968, 970; 2 Malloy, 1618, 1621.

kind" but this language must be read for its meaning with the federal laws implementing such treaties.

The United States Code provides: "An official record or document of a foreign country may be evidenced by a copy, summary, or excerpt authenticated as provided in the Federal Rules of Civil Procedure." 28 USCA 1741. This section contemplates a summary or excerpt or copy of an official record. Likewise, Federal Rule of Civil Procedure 44 (a) (2) provides [4] a foreign official record may be evidenced by an official publication thereof. While it might be said the "official publication" is an official document, it is the substratum official record or document which is being recognized. While it is true the steps taken in the preparation and authentication of the family tree report mechanically meet the requirements of Rule 44 (a) (2), the report does not comply with the rule. While the family tree report may have some official standing in Yugoslavia, having been signed by a recorder and sealed with the seal of the community, it is not clear from the face of the document and there is no testimony that it evidences official records or documents or entries therein.

It is also argued that even if the family tree report is admissible the conclusions of relationships therein are not admissible. True, conclusions stated in official rec-

---

[4] "*Foreign.* A foreign official record, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof; or a copy thereof, attested by a person authorized to make the attestation, and accompanied by a final certification as to the genuineness of the signature and official position (i) of the attesting person, or (ii) of any foreign official whose certificate of genuineness of signature and official position relates to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States."

ords are not admissible under sec. 889.18 (1), Stats. *Smith v. Rural Mut. Ins. Co.* (1963), 20 Wis. 2d 592, 123 N. W. 2d 496; *Estate of Eannelli* (1955), 269 Wis. 192, 68 N. W. 2d 791. However, the conclusions complained of in the family tree report may not be conclusions but recorded facts. We do not know whether the source material of the report contains the relationship or whether they are conclusions of the recorder who made up the report. Additionally, we find no merit in the appellant's contention that the word "Sega" does not refer to the deceased Shega or the Shega family. We accept the explanation [5] of the respondents in their brief.

The proof of heirship in Wisconsin must be by testimony or by deposition of one or more witnesses. Sec. 318.06 (7) (b), Stats. The family tree report standing alone is not sufficient. The testimony to prove heirship of Attorney Berkanovic, who realized as attorney he could not testify excepting as to formal matters was insufficient. He stated that his testimony was based upon the family tree report. While this in form perhaps satisfied the statute, the testimony being hearsay did not constitute competent substantive proof required by the section. The requirements of this section might have been met by written interrogatories taken in Yugoslavia under sec. 887.26. This, no doubt, would have been time consuming and costly. The family tree report might have

---

[5] "A slight inquiry by appellant's counsel would have revealed that in Serbo-Croatian the "S" with an inverted circumflex accent over it (Š) is pronounced with a "sh" sound as in "shall." *John Dynely Prince, Serbo-Croatian Grammar, Hafner Publishing Company, Inc., New York, 1951, page 2;* a popular English-Croatian, Croatian-English dictionary, *F. A. Bogadek's, Hafner Publishing Co., Inc., 1954, page 418,* shows the letter "s" with the inverted circumflex accent (Š) to be treated as a separate letter and distinct from the regular "s," because of the difference in pronunciation. The Lower Court took judicial notice of this easily and positively ascertainable fact and respondent asks this court to take judicial notice of it . . . ." (Resp. p. 19)

been made admissible by testimony of an expert on the law of Yugoslavia. We do not construe sec. 318.06 (7) (b), to exclude proof by documents or require all proof of heirship to be oral.

We appreciate the proof of heirship involving foreign heirs presents many problems because of differences in legal systems, public records, procedures and language, and while some tolerance may be permitted, our courts must have sufficient evidence concerning foreign documents and their authenticity and their relationship to the facts to be proved to be able to make a determination with a reasonable assurance of accuracy. A family tree report or a genealogy may be considerable help in the proof of foreign heirs, but its validity as an official document purporting to be a schematic description of genealogical relationships individually evidenced in public documents must either appear from the document or from the testimony in relation to it. Unfortunately, neither is found in this case.

Since this is an important case involving escheat and the method of proving heirship involving foreigners and the problem frequently recurs in this state, we think in the interest of justice that the respondents should be given a further opportunity to prove their heirship by such documents and testimony as are admissible. We are mindful family tree reports have been used in many probate proceedings in Wisconsin. Whether the reports are identical to the one under consideration, we do not know, but it is quite likely that because of the practice, the present respondents were misled in the requirement of their proof and they should be given a further opportunity to prove their heirship. This requires the judgment to be reversed and the cause remanded for further proceedings.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.