IN THE MATTER OF THE ESTATE OF ANNA MARGRETHE ANDERSON, Deceased. WHELMINA ELIZABETH PETERSON, ET AL, Legatees and Appellants. THE UNITED STATES, Intervener and Appellant. C. L. HANSON, Administrator and Appellee. THE STATE OF IOWA, EX REL, the State Treasurer, Claimant and Appellee.

Taxation: INHERITANCE TAXES: NONRESIDENT BENEFICIARIES: CONFLICT OF LAWS. A Collateral Inheritance tax is not a tax upon property, but is rather a means of regulating the transmission of the property of an estate to collateral heirs, the amount of the same being deducted by the executor or administrator and paid to the State Treasurer before distribution of the estate; and the statute imposing a higher tax upon non-resident than upon resident beneficiaries is not therefore in conflict with the treaty between the United States and Denmark, which provides in effect that no higher taxes shall be imposed by either party upon the property, money or effects of the other, when removed from the country, either upon inheritance or otherwise, than in the case of its own citizens.

*Appeal from Mitchell District Court.*—HON. J. F. CLYDE, Judge.

MONDAY, JUNE 29, 1914.

ANNA Margrethe Anderson died testate September 16, 1909. Her will was probated, and H. S. Houg appointed executor. The latter dying, C. L. Hanson was appointed

administrator with the will annexed. On November 22, 1911, he filed his final report disclosing that after paying debts, costs of administration, and specific legacies, there remained of the proceeds of the personal property in his hands $1,652.97 and of the realty, which the will directed to be converted into cash, $900. A collateral inheritance tax with interest amounting to $513.96 was paid to the treasurer of the state leaving $2,074.24 to be distributed under the residuary clause of the will per stirpes to the children of a deceased brother and two sisters, all residents of the Kingdom of Denmark. The legatees objected to the final report on the ground that no greater inheritance tax might be exacted than were they citizens of the state of Iowa; and the United States, by way of petition of intervention, raised the same objection, averring that the legatees were citizens and subjects of the Kingdom of Denmark. The state of Iowa and its treasurer demurred to this petition, and the demurrer was sustained. The objections of the legatees also were overruled and the final report approved. The United States and the legatees appeal.—*Affirmed.*

*Bastrup & O'Neill,* for appellants Peterson and others.

*A. Van Wagenen,* for the United States. *A. E. Brown,* for the State.

*A. A. Kugler,* for appellee Hanson.

LADD, C. J.—The decedent at the time of her death was a resident and citizen of Iowa. Being childless, she left the bulk of her estate to the children of a deceased brother and two sisters, all of whom were then residents of Denmark and subjects of that kingdom. In his final report the administrator with the will annexed credited himself with $513.96 paid the treasurer of the state as inheritance tax, being 20 per cent. of the portion of the estate to be distributed to the above legatees, in pursuance of section 1467 of the Code Supp. 1907 as amended. This statute reads:

All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state, or by deed, grant, sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor, to any person in trust or otherwise, other than to or for the use of the father, mother, husband, wife, lineal descendant, adopted child, the lineal descendant of an adopted child of a descendant, stepchild, or the lineal descendant of a stepchild of a decedent, or to or for charitable, educational or religious societies or institutions, including hospitals, public libraries and public art galleries kept open to the free use of the public not less than three days of each week, within this state, shall be subject to a tax of five per centum of its value, above the sum of one thousand dollars, after the payment of all debts, for the use of the state; and all administrators, executors and trustees and any such grantee under a conveyance, and any such donee under a gift made during the grantor's or donor's life, shall be respectively liable for all such taxes to be paid by them, respectively, except as herein otherwise provided, with lawful interest as hereinafter set forth, until the same shall have been paid. The tax aforesaid shall be and remain a lien on such estate from the death of decedent until paid. Whenever property, or any interest therein, shall pass to the heirs, devisees, or other beneficiaries, as contemplated in the foregoing provisions, who are aliens, non-residents of the United States, the same shall be subject to a tax of twenty per centum of its true value, except where such foreign beneficiaries are brothers or sisters of the decedent owner, when the rate of tax to be assessed and collected therefrom shall be ten per centum of the value of the property or interest so passing.

The objection of the legatees as well as the government of the United States is that, though payment by the administrator was in accordance with the above statute, the exaction of more than 5 per cent. was in violation of the treaty rights of the legatees. The treaty in question was concluded April 26, 1826 (8 Stat. 340) and renewed in 1857 (11 Stat. 719). Its main concern was with commerce and navigation. In the first

article, the high contracting parties stipulated not to grant any particular "favor to other nations in respect of commerce and navigation, which shall not immediately become common to the other party, who shall enjoy the same freely, if the concession were freely made, or on allowing the same compensation, if the concession were conditional." Article 2 permits the citizens of each to visit the coasts and reside and trade in the other. Articles 3 and 4 relate to the carriage in the vessels of the respective parties and the imposition of duties. Article 5 has been abrogated and 6 excludes the application of the treaty from certain colonies. Article 7 reads:

᾽ The United States and his Danish majesty mutually agree, that no higher or other duties, charges, or taxes of any kind, shall be levied in the territories or dominions of either party, upon any personal property, money, or effects, of their respective citizens or subjects, on the removal of the same from their territories or dominions reciprocally, either upon the inheritance of such property, money, or effects or otherwise, than are or shall be payable in each state, upon the same, when removed by a citizen or subject of such states respectively.

The articles following relate to the designation of consuls and vice consuls the privileges and rights they are to enjoy, their exemptions, the term of the treaty, and its ratification. It is plain from this recital that the favored nation clause, being limited to commerce and navigation, cannot be permitted to expand the terms of the seventh article, and that the context is of no aid in the interpretation of that article. Of course, the statute must yield to the terms of this article if in conflict therewith. *Opel v. Shoup,* 100 Iowa, 407; *Doehrel v. Hillmer,* 102 Iowa, 169.

Treaties are to be "liberally construed, so as to carry out the apparent intention of the parties to secure equality and reciprocity between them. As they are contracts between independent nations, in their construction words are to be taken in their ordinary meaning, as understood in the public law of

nations, and not in any artificial or special sense impressed upon them by local law, unless such restricted sense is clearly intended. And it has been held by this court that where a treaty admits of two constructions, one restrictive of rights that may be claimed under it and the other favorable to them, the latter is to be preferred." *Geofroy v. Riggs*, 133 U. S. 258, at 271 (10 Sup. Ct. 295, 298, 33 L. Ed. 642).

It will be noted that discrimination is to be avoided in charges or taxes levied "upon any personal property, money or effects." As to whether the word "effects" should be construed to include real estate need not be determined; the point not having been raised by assignment or briefed in the statement of points. It is to be observed, however, that in a somewhat similar connection it has been construed, in an elaborate opinion, to mean land as well as personalty, in *Adams v. Akerlund*, 168 Ill. 632 (48 N. E. 454), and this was followed in *Stixrud v. State*, 58 Wash. 339 (109 Pac. 343, 33 L. R. A. (N. S.) 632, Ann. Cas. 1912-A, 850). A different view seems to have been entertained in *Meier v. Lee*, 106 Iowa, 303, though apparently without reverting to many authorities. The collateral inheritance tax is not levied upon any of these. The authorities are agreed that this is neither a property nor a personal tax. It is referred to in *Herriott v. Bacon*, 110 Iowa, 342, as "the tax on the succession to property." The annotator in his note to *Re Estate of McKennan*, 33 L. R. A. (N. S.) 606, says:

The overwhelming weight of authority supports the rule that such tax is a bonus in the nature of an excise or duty exacted by the state for the privilege granted by its laws of inheriting or succeeding to property on the death of the owner.

Several definitions are cited in the note and in the view of Whiting, J., expressed in the main case:

It is not a tax upon the right to inherit or to succeed nor upon the right to transmit but a tax upon the exercise of such right upon the transmission of property.

In the majority opinion, however, it is said that:

It is the succession or transmission or receipt of property occasioned by death that is subject to the tax.

Though the matter of nomenclature is not very important, it is to be observed that the view of Whiting, J., seems to be in accord with *Knowlton v. Moore,* 178 U. S. 55 (20 Sup. Ct. 753, 44 L. Ed. 969), where it is said:

The tax is on the passing of legacies or distributive shares of personalty.

After reviewing the authorities somewhat, that court concluded:

Thus, looking over the whole field, and considering death duties in the order in which we have reviewed them—that is, in the Roman and ancient law, in that of modern France, Germany, and other continental countries, in England and those of her colonies where such laws have been enacted, in the legislation of the United States and the several states of the Union—the following appears: Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes, or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested.

A like opinion was rendered in *U. S. v. Perkins,* 163 U. S. 625 (16 Sup. Ct. 1073, 41 L. Ed. 287). One Merriain had devised and bequeathed all his property to the government, and an inheritance tax was assessed by the proper officers of New York which the courts there confirmed. On appeal, the Supreme Court of the United States, speaking through Brown, J., held that:

In this view, the so-called inheritance tax of the state of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use; in other words, that the right to dispose of his property by will shall remain, but subject to a condition that the state has a right to impose. Certainly, if it be true that the right of testamentary disposition is purely statutory, the state has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the state that it becomes the property of the legatee.

After quoting from decisions from Maryland and New York that the tax is upon the transmission, the court concluded:

We think that it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is imposed upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and it is only upon this condition that the Legislature assents to a bequest of it.

This is in harmony with the method of levying and collecting the inheritance tax in this state. Sections 1475, 1477, 1480. The tax is deducted by the executor or administrator from the legacy or share of the lateral heir or legatee and paid by him to the State Treasurer. As held in the case last cited, the portion exacted as a tax never reaches the person taking the estate as his property, and therefore the language of the treaty was not applicable thereto. The statute may well be construed as regulating the transmission of the property of deceased persons, and, independent of treaty right, neither the unwritten law nor the Constitution prohibits discrimination between citizens and foreigners in these respects. The

precise question involved was determined in *Frederickson v. Louisiana,* 64 U. S. (23 How.) 445 (16 L. Ed. 577). There, the discrimination was against "each and every person, not being domiciled in this state and not being a citizen of any other state or territory in the Union," and while saying that this described citizens of Louisiana residing abroad as well as subjects of the Kingdom of Wurtemberg, and therefore was not discriminatory, the court concurred with the Supreme Court of Louisiana—

in the opinion that the treaty does not regulate the testamentary dispositions of citizens or subjects of the contracting powers, in reference to property within the country of their origin or citizenship. The cause of the treaty was that the citizens and subjects of each of the contracting powers were or might be subject to onerous taxes upon property possessed by them within the states of the other, by reason of their alienage, and its purpose was to enable such persons to dispose of their property, paying such duties only as the inhabitants of the country where the property lies, pay under like conditions. The case of a citizen or subject of the respective countries residing at home, and disposing of property there in favor of a citizen or subject of the other, was not in the contemplation of the contracting powers, and is not embraced in this article of the treaty. This view of the treaty disposes of this cause upon the grounds on which it was determined in the Supreme Court of Louisiana.

The treaty there considered, though not worded like that in question, was of similar import, and the decision must be regarded as decisive of this case. The language of the treaties construed in *Succession of Rixner,* 48 La. Ann. 552 (19 South. 597, 32 L. R. A. 177), and *In Re Estate of Stixrud,* 58 Wash. 339, 109 Pac. 343 (33 L. R. A. (N. S.) 632, Ann. Cas. 1912-A, 850), was such as to differentiate the cases from that before us. The court, as we think, rightly adjudged the statutes relating to the exaction of an inheritance tax not in conflict with the provisions of the treaty with Denmark.—*Affirmed.*

Deemer, Weaver, Gaynor, and Withrow, JJ., concur.