PETERSEN ET AL., LEGATEES OF ANDERSON, *v.*
STATE OF IOWA EX REL. THE STATE TREAS-
URER, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 74.   Argued November 21, 1917.—Decided December 10, 1917.

Article 7 of the treaty with Denmark of April 26, 1826, 8 Stat. 340, (renewed April 11, 1857, 11 Stat. 719,) places no limitation upon the right of either government to deal with its own citizens and their property, within its dominion.

Therefore, where a native of Denmark, who became a naturalized citizen of the United States, died a resident and property owner in the State of Iowa, and in the settlement there of his estate inheritance taxes were imposed in respect of legacies to subjects and residents of Denmark, the treaty affords the legatees no basis for complaining of the discrimination of the Iowa law (1907 Supp. Code,

· § 1467), which taxes legacies to nonresident aliens higher than those given under similar conditions to residents of the State without regard to the residence or nationality of the testator.

The favored nation clause in Article 1 of the above cited treaty with Denmark is applicable only "in respect of commerce and navigation;" it does not apply where the discrimination complained of is in the rates of state inheritance taxes.  ·

166 Iowa, 617, affirmed.

THE case is stated in the opinion.

*Mr. Hugh O'Neill* for plaintiffs in error.

*Mr. Freeman C. Davidson,* with whom *Mr. H. M. Havner,* Attorney General of the State of Iowa, and *Mr. C. A. Robbins,* Assistant Attorney General of the State of Iowa, were on the brief, for defendants in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Anna M. Anderson, a native of Denmark, but a naturalized citizen of the United States, died in the State of Iowa where she resided and owned property. By her will she gave money legacies to her nephews and nieces who were subjects of the Kingdom of Denmark and resided therein. By the death duties imposed by the law of the State of Iowa a higher rate was imposed on legacies made to nonresident aliens than was payable on those given under similar conditions to residents of Iowa whether made by a citizen or by resident or nonresident aliens. (§ 1467, 1907 Supplement to the Code of Iowa.) The representative of the estate of Anderson in filing his accounts having credited himself with the sum due to the State on the legacies, which he had paid, the foreign legatees opposed the allowance of such

credit on the ground that the charge of a greater sum to them because they were aliens and nonresidents than would have been charged against them had they been residents, was illegal because in conflict with a treaty between the United States and Denmark. The case is here to review the action of the court below rejecting such contention and upholding the validity of the charge. 166 Iowa, 617.

The court, conceding that if the treaty were applicable it would be controlling, based its conclusion solely on the ground that the treaty when rightly considered did not apply, and in the argument at bar the error of this conclusion is the sole ground relied upon .

The treaty is that of April 26, 1826 (8 Stat. 340), renewed in 1857 (11 Stat. 719), and the particular clauses invoked are Article 1, the favored nation clause, and Article 7, dealing more directly with the subject under consideration. We postpone momentarily the first to come at once to the latter. The article is as follows:

"The United States and his Danish Majesty mutually agree, that no higher or other duties, charges, or taxes of any kind, shall be levied in the territories or dominions of either party, upon any personal property, money, or effects, of their respective citizens or subjects, on the removal of the same from their territories or dominions reciprocally, either upon the inheritance of such property, money, or effects, or otherwise, than are or shall be payable in each State, upon the same, when removed by a citizen or subject of such State respectively."

It is obvious that the article places restrictions upon the authority of the respective countries to impose taxes, duties or charges under the circumstances and conditions for which it provides. Conceding that it requires construction to determine whether the prohibitions embrace taxes generically considered, or death duties, or excises on the right to transfer and remove property, singly or

collectively, we are of the opinion that the duty of interpretation does not arise since in no event would any of the prohibitions be applicable to the case before us. We are constrained to this conclusion because the case here presented concerns only the power of the State of Iowa to deal with a citizen of that State and her property there situated, while the prohibitions of the treaty, giving to them their widest significance, apply only to a citizen of Denmark and his right to dispose of his property situated in the State of Iowa. This is undoubted because there is no controversy as to the first, the citizenship in Iowa, and there is not room for substantial doubt as to the latter, since on the face of the treaty the contractual limitations which it provides are manifestly intended not to control or limit the right of either of the governments to deal with its own citizens and their property within its borders, but were solely intended to restrict the power of both of the governments to deal with citizens of the other and their property within its dominions. But, if the mere letter of portions of the article when separately considered would leave room for any doubt on the subject, it would be dispelled by the context and by the consideration that the foundation of the provision is the recognition of the plenary power of each country to legislate according to its conceptions of public welfare as to its own citizens and their property within its jurisdiction. Indeed that which is contracted against is merely a departure by discrimination by either one of the countries against the citizens of the other and their property therein from the legislation governing their own citizens. In other words, the right of the citizens of each of the contracting countries reciprocally to own, dispose of or transmit their property situated in the other country, free from provisions or restrictions discriminating because of alienage, is in the largest possible sense that which is protected by the treaty. And conversely this being true, it follows also that the

treaty did not protect the right of the citizens of either country to acquire by transfer or inheritance property situated in the other belonging to its own citizens free from the restraints imposed by the law of such country on its own citizens even although such restraints would. not have been applicable in case the property had been disposed of or transmitted to a citizen.

The ruling in *Frederickson* v. *Louisiana,* 23 How. 445, while it concerned a treaty with a different country, is here aptly illustrative and persuasively controlling. In that case the contention was that limitations contained in a treaty between the United States and the King of Wurttemburg forbidding discrimination as to the disposal or transmission of their property by subjects of the King of Wurttemburg were applicable to property in the State of Louisiana of a citizen of that State because of the accidental circumstance that the property had passed by the. death of such citizen to subjects of the King of Wurttemburg, nonresidents in the United States. In holding the contention to be unfounded it was said (p. 447):

"But we concur with the Supreme Court of Louisiana in the opinion that the treaty does not regulate the testamentary dispositions of citizens or subjects of the contracting Powers, in reference to property within the country of their origin or citizenship. The cause of the treaty was, that the citizens and subjects of each of the contracting Powers were or might be subject to onerous taxes upon property possessed by them within the States of the other, by reason of their alienage, and its purpose was to enable such persons to dispose of their property, paying such duties only as the inhabitants of the country where the property lies. pay under like conditions. The case of a citizen or subject of the respective countries residing at home, and disposing of property there in favor of a citizen or subject of the other, was not in the contem-

plation of the contracting Powers, and is not embraced in in this article of the treaty."

And this view disposes of the elaborate argument concerning the right of the foreign legatees to remove the property as there is here no question of a burden placed by the State of Iowa on the right to remove other than that which the argument assumes may have indirectly resulted from the payment of the lawful duty imposed by the State of Iowa upon its own citizens and as to their property within its own borders. The duty to pay on such property which preceded and accompanied the right of such foreign legatees was not a burden upon their right to remove their property, as such right of property on their part was dependent on the payment and could not and did not arise until the payment was made. *United States* v. *Perkins,* 163 U. S. 625.

This leaves only the contention as to the favored nation clause contained in the first article of the treaty. But as to that it suffices to say that the argument does not take into view, but disregards the words by which the clause is limited and which expressly make it applicable only "in respect of commerce and navigation," a limitation which it has been settled does not embrace the subject we are now dealing with. *Mager* v. *Grima,* 8 How. 490, 494.

*Affirmed.*