IN RE ESTATE OF ANDERS ANDERSON.

JENS C. NIELSEN, Administrator, Appellant, v. R. E. JOHNSON, State Treasurer, Appellee.

FEBRUARY 14, 1928.

*Nelson Miller*, for appellant.

*John Fletcher*, Attorney-general, *Carl J. Stephens*, Assistant Attorney-general, *George W. Sturges*, and *Albert H. Adams*, for appellee.

ALBERT, J.—The final report of the administrator in this estate, Jens C. Nielsen, alleges that the property of the estate in his hands is exempt from inheritance tax, under Chapter 351, Code of 1924. The treasurer of state, Ray E. Johnson, objected to this report, and the court held that the estate was subject to the tax.

The facts out of which this controversy arose are quite simple: Anders Anderson died on the 9th day of February,

1923, a resident of Plymouth County, Iowa, and was engaged in  farming in that county. He was a citizen of Denmark. His estate consisted wholly of personal property. He died intestate, leaving his mother, at that time a resident and citizen of Denmark, as his only heir at law. The net estate of the deceased, after payment of all claims and charges, was $3,077.19. From this amount must be deducted the interest accruing after the administrator took charge of the same, leaving an actual net balance of $3,006.37.

The substance of the contention of appellant is that, under the Iowa law, if this mother had been a resident of the United States at the time of her son's decease, she would take the aforesaid amount in full, free from inheritance tax; and that her nonresidence does not deprive her of such right, because of a treaty existing between the United States government and the government of Denmark, which will be hereinafter set out.

To a full understanding of this contention, reference must be made to the statute existing at that time.

Section 2, Chapter 38, of the Acts of the Thirty-ninth General Assembly, in part provides:

"The estates of all deceased persons in any property whether the decedents be inhabitants of this state or not, * * * or the property of any decedent domiciled within this state at the time of the death of such decedent, * * * shall be subject to tax as herein provided. The tax hereby imposed shall be collected upon the net market value * * * of any property passing: (a) By will or under the statutes of inheritance of this or any other state or country. * * * Any person becoming beneficially entitled to any property or interest therein by any method of transfer as herein specified, and all administrators, executors, referees, and trustees of estates or transfers taxable under the provisions of this act, shall be respectively liable for all such taxes to be paid by them respectively. * * * The tax shall be and remain a legal charge against and a lien upon such estate, and any and all the property thereof from the death of the decedent owner until paid."

Section 3 contains the following:

"The tax imposed by this act shall not be collected:

"(a) When the net value of the estate of decedent passing

to the beneficiaries named in Class b of Section 4 of this act, after deducting the debts as defined herein, does not exceed the sum of $1,000, provided, however, that where such net value of such estate exceeds $1,000, then the whole of said net estate shall be subject to said tax."

Section 4 provides for the rate of taxation, and also contains the following:

"(a) When such property, interest or income passes to the wife or the husband of the deceased, in excess of the distributive share of such surviving spouse, grantor, donor or vendor, or to the father or mother or to any child of such decedent, grantor, donor or vendor, * * * the tax imposed shall be on the individual share so passing, and shall be as follows: One per centum on any amount in excess of $15,000 and up to $30,000. * * *

"When the property or any interest therein or income therefrom taxable under the provisions of this act passes to:

"(b) Any person, firm, corporation or society other than those designated in Paragraph a of this section, the rate of tax imposed shall be as follows: * * * Provided, however, that when property or any interest therein shall pass to heirs, devisees or other beneficiaries subject to the tax imposed by this chapter, who are aliens, nonresidents of the United States, the same shall be subject to a tax of 20 per centum of its true value except when such foreign beneficiaries are brothers or sisters of the decedent owner or are within the class described in Paragraph a of this section, when the rate of tax to be assessed and collected therefrom shall be 10 per centum of the value of property or interest so passing."

If we apply the facts in the instant case to these sections, under Subdivision a of Section 4, the taker of this property being the mother of the decedent, and the amount of property being less than $15,000, the property would not be subject to tax, unless it be by reason of the subsequent provisions of this section which provide that, if she is an alien nonresident of the United States, the tax should be 20 per cent; but by reason of her being within the class designated in Paragraph a of this section, the tax should be 10 per cent. This shows clearly the reason for the contentions of the respective parties hereto. In other words, if this mother had been a resident of the United States at the time of her son's death, although she were an alien,

she would take this property undiminished by the inheritance tax. Under the law as above quoted, she being an alien non-resident of the United States, the portion she takes is subject to a diminution to the amount of 10 per cent of the net value of the property or interest thus passing to her. To state it in another way, whether the property thus passing to her shall be diminished by the statutory tax of 10 per cent is made to turn wholly upon the question of whether she is a resident or a non-resident of the United States.

At the time in question, there existed between the government of the United States and the government of Denmark a treaty (8 Statutes at Large 340), one of the provisions of which is as follows:

"Article 7. The United States and his Danish Majesty mutually agree, that no higher or other duties, charges or taxes of any kind, shall be levied in the territories or dominions of  either party, upon any personal property, money or effects of their respective citizens or subjects, on the removal of the same from their territories or dominions reciprocally, either upon the inheritance of such property, money, or effects, or otherwise, than are or shall be payable in each state, upon the same, when removed by a citizen or subject of such state, respectively."

Does the Iowa statute conflict with this provision of the treaty?

The briefs and arguments submitted are confined wholly to cases from this state and others from the United States Supreme Court to which reference will be made hereinafter.

We have held that the tax referred to in this statute is not a tax upon property itself, or upon the estate, but upon the succession, or right to take by succession; in other words, a death or excise tax. *Wieting v. Morrow*, 151 Iowa 590; *In re Estate of Anderson*, 166 Iowa 617; *In re Estate of Annis*, 195 Iowa 493; *In re Estate of Thompson*, 196 Iowa 721; *In re Estate of Meinert*, 204 Iowa 355.

In the case of *Mager v. Grima*, 8 How. (U. S.) *490 (12 L. Ed. 1168), that court had before it a case arising in the state of Louisiana. The Louisiana law provided that every beneficiary of an estate who was not domiciled within the state and who was not a citizen of any state or territory in the Union should pay a

tax of 10 per cent on all sums or on the value of all property which they might actually receive from such succession. It was there claimed that the tax in question was laid on the person and rights of an alien residing in his own country, or that it was a tax on the property and effects in the hands of the executor, and under the sole destination of being exported to foreign legatees, and so was a tax on exports, expressly prohibited by the Constitution. In discussing these questions, the Supreme Court of the United States said:

"Now, the law in question is nothing more than an exercise of the power which every state and sovereignty possesses, of regulating the manner and term upon which property, real or personal, within its dominion may be transmitted by last will and testament, or by inheritance, and of prescribing who shall and who shall not be capable of taking it. Every state or nation may unquestionably refuse to allow an alien to take either real or personal property situated within its limits, either as heir or legatee, and may, if it thinks proper, direct that property so descending or bequeathed shall belong to the state. In many of the states of the Union, at this day, real property devised to an alien is liable to escheat. And if a state may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy. This has been done by Louisiana. The right to take is given to the alien, subject to a deduction of ten per cent for the use of the state. In some of the states, laws have been passed at different times imposing a tax similar to the one now in question, upon its own citizens, as well as foreigners; and the constitutionality of these laws has never been questioned. And if a state may impose it upon its own citizens, it will hardly be contended that aliens are entitled to exemption, and that their property in our own country is not liable to the same burdens that may lawfully be imposed upon that of our own citizens. We can see no objection to such a tax, whether imposed on citizens and aliens alike, or upon the latter exclusively. It certainly has no concern with commerce, or with imports or exports. It has been suggested, indeed, in the argument, that, as the legatee resided abroad, it would be necessary to transmit to her the proceeds of the portion of the estate to which she was entitled, and that the law was, therefore, a tax on exports. But

if that argument was sound, no property would be liable to be taxed in a state when the owner intended to convert it into money and send it abroad.''

The decision of the Louisiana Supreme Court sustaining the tax was affirmed.

The theory of the above holding is that there is no natural right to inherit property. Such right exists, however, by reason of statutory grant; and, as suggested in the above quotation, when the state provides by statute for inheritance of property, it has the right to do so under such conditions and limitations as it may choose. In the case at bar, the state of Iowa has attached to the right of inheritance certain limitations, which it has a right to do. Among other conditions provided is that, in event the inheritor is a resident of the United States, and comes within the class marked out in Subdivision a of the aforesaid Section 2 of the Acts of the Thirty-ninth General Assembly, the first $15,000 of the inheritance shall not pay a tax; but, in event that he is an alien, and also a nonresident of the United States, then he shall pay a higher rate of tax. In thus enacting these laws, the state of Iowa did not impinge upon the constitutional rights of the nonresident alien, unless it be that by such enactment the treaty rights above set out have been infracted.

In *In re Estate of Anderson*, 166 Iowa 617, we had before us this same treaty. In that case, however, the decedent was not only a resident, but a citizen, of Iowa. The beneficiaries were children of a deceased brother and two sisters, all residing in the kingdom of Denmark. We there held that the exaction of an inheritance tax was not in conflict with the provisions of the treaty with Denmark . This case was appealed to the United States Supreme Court, and will be found under the title of *Petersen v. State ex rel. State Treasurer*, 245 U. S. 170 (62 L. Ed. 225), where it was held that the treaty in no way concerned the ''power of the state of Iowa to deal with a citizen of that state and her property there situated,'' and that the prohibitions of the treaty—giving to them their widest significance— applied only to a citizen of Denmark and his right to dispose of his property situated in the state of Iowa. This is undoubtedly because there is no controversy as to the first, the citizenship in Iowa, and there is no room for substantial doubt as to the latter, since, on the face of the treaty, the contractual limitations

which it provides are manifestly intended not to control or limit the right of either government to deal with its own citizens and their property within its borders, but were solely intended to restrict the power of each of the governments to deal with citizens of the other and their property within its dominion. But if the mere letter of portions of the article, when separately considered, leaves room for any doubt on this subject, it will be dispelled by the context, and by the consideration that the foundation of the provision is the recognition of the plenary power of each country to legislate according to its conception of public welfare as to its own citizens and their property within its jurisdiction. Indeed, that which is contracted against is merely a departure, by designation, by either of the countries against a citizen of the other and his property therein from the legislation governing its own citizens. In other words, the right of citizens of each of the contracting countries, reciprocally, to own, dispose of, or transmit their property situated in the other country, free from provisions or restrictions discriminating because of alienage, is, in the largest possible sense, that which is protected by the treaty; and conversely, this being true, it follows also that the treaty did not protect the rights of citizens of either country to acquire by transfer or inheritance property situated in the other belonging to its own citizens, free from the restraints imposed by law by such country upon its own citizens, even though such restraints would not have been available in case the property had been disposed of or transmitted to a citizen.

In the case of *In re Estate of Petersen*, 168 Iowa 511, also decided by the Supreme Court of the United States, 245 U. S. 176 (62 L. Ed. 228) (there appearing as *Duus v. Brown*), the decedent was a naturalized citizen of the United States and a resident of the state of Iowa; and the rule just quoted from the *Petersen* case was followed, holding that the treaty with Sweden, of which country the decedent was a native, had no relation whatever to the right of the state to deal by death duties with its own citizens and their property within the state.

The question seems fairly well settled, therefore, that, under our statutes and under the treaty in question, where the decedent is a resident and a citizen of this state, the treaty in controversy has no application. But in the case at bar, the dece-

dent, while a resident, was not a citizen of the United States, but a citizen of Denmark. Does this make any difference?

In the case of *In re Estate of Pedersen*, 198 Iowa 166, at 177, we had a case identical in facts with the case at bar. Pedersen, at the time of his death, was a resident of the state of Iowa but a citizen of the kingdom of Denmark, and a part of his estate passed to nonresident aliens residing in the kingdom of Denmark. We there said:

"The present statute [Chapter 38, Acts of the Thirty-ninth General Assembly,] does not differ in any substantial degree from the former statute, in any such manner as to bring it within the provisions of the treaty with the kingdom of Denmark. The question is, therefore, not an open one in this state."

We have no disposition to depart from the rule announced in the *Pedersen* case, and, adhering thereto, we hold that the provisions of Chapter 38, Acts of the Thirty-ninth General Assembly, imposing an inheritance tax upon an estate passing to aliens who are residents of the kingdom of Denmark greater than is imposed upon citizens of the United States, are not in contravention of the provisions of Article VII of the treaty between the United States and the kingdom of Denmark.

The appellant makes no claim under what is known as "the most favored nation" clause of the treaty in question.

It would, therefore, seem that we are committed on this question by the *Pedersen* case; and, as we do not care to recede from the rule therein announced, it must follow that the decision of the district court in sustaining the objections to the administrator's final report herein was correct.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.