## UNITED STATES v. OKLAHOMA TAX COMMISSION (three cases).
### Nos. 2558, 2559, 2560.

Circuit Court of Appeals, Tenth Circuit.

Nov. 13, 1942.

Writ of Certiorari Granted Feb. 15, 1943.

MURRAH, Circuit Judge, dissenting.

Norman MacDonald, Atty., Dept. of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., and

John F. Cotter, Atty., Dept. of Justice, of Washington, D. C., on the brief), for the United States.

A. Francis Porta, of El Reno, Okl., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

These cases involve the power of the state of Oklahoma to impose an inheritance tax upon the restricted estates of deceased full-blood Indians.

Lucy Bemore was a full-blood Seminole Indian, enrolled opposite Seminole Roll No. 1563. She died intestate December 23, 1932. She left surviving, her husband, Lewis Bemore, a one-fourth blood Creek Indian, and a son, Thomas, an unenrolled full-blood Seminole Indian, who inherited her estate in equal shares.

Wosey Deere was a full-blood Creek Indian, enrolled opposite Creek Roll No. 9546. She died September 2, 1938. She left surviving, her husband, Milford Thomas, a seven-eighths blood Cherokee Indian, and two daughters and one son, all full-blood Creek Indians, to whom her estate passed.

Nitey was a full-blood Seminole Indian, enrolled opposite Seminole Roll No. 1446. She died August 17, 1930. She left a will devising and bequeathing her estate, in equal shares, to her five surviving full-blood Seminole children.

Each of the three deceased Indians, respectively, at the time of her death was domiciled in and a resident of the state of Oklahoma. Oklahoma assessed an inheritance tax upon the transfer of each of their estates. The Secretary of the Interior paid the amount of each tax under protest, and the United States brought these actions pursuant to the provisions of 68 O.S.A. § 1475, to recover the amounts paid, with interest.

Each of the deceased Indians died seized of lands, restricted against alienation, being homestead and surplus allotments or lands purchased with restricted funds title to which was taken under a restricted form of deed, and personal property and cash held as trust funds in the custody and control of the Secretary of the Interior.

From judgments denying each of the several claims, the United States has appealed.

■ Under the first proviso of § 9 of the Act of May 27, 1908, 35 Stat. 315, restricted lands of allottees of the Five Civilized Tribes which passed by inheritance to full-blood Indian heirs remained subject to qualified restrictions. Under the amendment of April 12, 1926, 44 Stat. 239, lands passing to a full-blood Indian of the Five Civilized Tribes by devise are also subject to such qualified restrictions.[1] Hence, the lands which passed by inheritance to the full-blood heirs of Bemore and Deere and by devise to the full-blood devisees of Nitey remained subject to qualified restrictions.[2]

Sec. 23 of the Act of April 26, 1906, 34 Stat. 137, 145, as amended by § 8 of the Act of May 27, 1908, 35 Stat. 312, 315, authorized a member of the Five Civilized Tribes to devise and bequeath all of his estate, real and personal, including his restricted allotments, without restriction or condition, but provided that a will of a full-blood Indian devising real estate should not be valid if it disinherited the "parent, wife, spouse, or children" of such full-blood Indian, unless it was acknowledged before and approved by a judge of the United States Court for the Indian Territory, a United States Commissioner, or a judge of a county court of the state of Oklahoma.[3]

Ch. 162, O.S.L.1915, § 1, O.S.1931, § 12469, applicable to the Bemore estate, in part reads:

"A tax is hereby laid upon the transfer to persons * * * of property * * *:

"First: By will or the intestate laws of this state; * * *."

Ch. 66, Art. 5, O.S.L.1935, applicable to the Deere and Nitey estates, in part reads as follows:

"A tax is hereby levied upon the transfer of the net estate of every decedent, * * *

---

[1] Whitchurch v. Crawford, 10 Cir., 92 F.2d 249, 251; Burgess v. Nail, 10 Cir., 103 F.2d 37, 42.

[2] Parker v. Richard, 250 U.S. 235, 238, 39 S.Ct. 442, 63 L.Ed. 954; United States v. Gypsy Oil Co., 8 Cir., 10 F.2d 487, 489; Holmes v. United States, 10

Cir., 53 F.2d 960, 961; United States v. Mid-Continent Petroleum Corp., 10 Cir., 67 F.2d 37, 42; Commissioner v. Owens, 10 Cir., 78 F.2d 768, 775; Glenn v. Lewis, 10 Cir., 105 F.2d 398, 400.

[3] See Wilson v. Greer, 50 Okl. 387, 151 P. 629, 630.

to persons, * * * by will or the intestate laws of this state, * * *." Section 1.

There is nothing in the treaties or acts of Congress which expressly exempts estates of members of the Five Civilized Tribes from the imposition of an inheritance tax.[4] Congress has not expressly consented to the imposition of such a tax.

The United States contends that the property passed, not under the laws of Oklahoma and not with Oklahoma's permission, but under federal law, and that the restricted estates were federal instrumentalities and not subject to tax by the state without the assent of the Federal government.

The Oklahoma Enabling Act of June 16, 1906, 34 Stat. 267, 277, § 21, provides that: " * * * all laws in force in the Territory of Oklahoma at the time of the admission of said State into the Union shall be in force throughout said State, except as modified or changed by this Act or by the constitution of the State, and the laws of the United States not locally inapplicable shall have the same force and effect within said State as elsewhere within the United States."

By § 1 of the Oklahoma Enabling Act, 34 Stat. 267, Congress provided that nothing contained in the constitution of Oklahoma should be construed to limit or impair "the rights of person or property pertaining to the Indians" within Oklahoma or to limit or affect the authority of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law or otherwise.

Sec. 2 of the Schedule of the Oklahoma Constitution provides that "All laws in force in the Territory of Oklahoma at the time of the admission of the State into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the State of Oklahoma until they expire by their own limitation or are altered or repealed by law."

■ By the Act of April 28, 1904, 33 Stat. 573, § 2, Congress declared that all laws of Arkansas theretofore put in force in the Indian Territory should be taken to "embrace all persons and estates in said Territory, whether Indian, freedmen, or otherwise." The adoption of the Arkansas law was intended to be merely provisional.[5] The provisions of the Enabling Act above quoted substituted the Oklahoma law of descent for that of Arkansas theretofore put in force in the Indian Territory.[6]

In Childers v. Beaver, 270 U.S. 555, 559, 46 S.Ct. 387, 388, 70 L.Ed. 730, involving the power of the state of Oklahoma to impose an inheritance tax upon the transfer of the restricted estate of a deceased Quapaw Indian, the court said:

"Congress provided that the lands should descend and directed how the heirs should be ascertained. It adopted the provisions of the Oklahoma statute as an expression of its own will; the laws of Missouri or Kansas, or any other state, might have been accepted. The lands really passed under a law of the United States, and not by Oklahoma's permission.

"It must be accepted as established that during the trust or restrictive period Congress has power to control lands within a state which have been duly allotted to Indians by the United States and thereafter conveyed through trust or restrictive patents. This is essential to the proper discharge of their duty to a dependent people, and the means or instrumentalities utilized therein cannot be subjected to taxation by the state without assent of the federal government."[7]

In Childers v. Pope, 119 Okl. 300, 249 P. 726, 728, the Supreme Court of Oklahoma said:

"We therefore must hold that the real estate and the mineral interests in this case were cast under the law of the United States, which adopted the Oklahoma Statute. * * * We are of the opinion that the inheritance tax is authorized to be assessed, levied, and collected by the state or the United States, and the authority is given for the privilege of allowing or authorizing a party to transmit by a will, deed, or conveyance to be operative after the death of decedent, or by operation of law in case of an intestate decedent, under the

---

[4] Landman v. Commissioner, 10 Cir., 123 F.2d 787.

[5] Shulthis v. McDougal, 225 U.S. 561, 571, 32 S.Ct. 704, 56 L.Ed. 1205; Jefferson v. Fink, 247 U.S. 288, 292, 38 S.Ct. 516, 62 L.Ed. 1117.

[6] Jefferson v. Fink, 247 U.S. 288, 294, 38 S.Ct. 516, 62 L.Ed. 1117.

[7] See, also, Childers v. Pope, 119 Okl. 300, 249 P. 726.

laws of descent and distribution applicable to the transfer of said estate. * * * Under the Beaver case, it being held that the real property passed by permission of the laws of the United States, and not by Oklahoma law, then, no inheritance tax can be collected by plaintiff against the allotment, inherited lands, or tribal mineral interests of the deceased."

■ The power to assess an inheritance tax rests on the principle that since the rights to receive or transmit property are not natural rights, but are creatures of the legislature, they are completely subject to taxation and control by the authority which created them.[8]

■ Under the holding in Childers v. Beaver, supra, and Childers v. Pope, supra, in the instant cases, the rights of the deceased Indians to transmit the property, and the rights of the heirs and beneficiaries to receive such property, flowed not from state laws as such, but from laws of the United States, and the property passed with the permission of the United States rather than with Oklahoma's permission. It follows that Oklahoma may not impose an inheritance tax upon the passing of the estates herein involved.

It is true that the instrumentality doctrine, as applied to restricted lands of Indians, has been limited by the decision of the Supreme Court of the United States in Helvering v. Mountain Producers Corporation, 303 U.S. 376, 383–387, 58 S.Ct. 623, 82 L.Ed. 907, which expressly overruled the Coronado and Gillespie cases,[9] but Childers v. Beaver, supra, has not been overruled, and this court is still bound by that decision.

Restricted Indians in Oklahoma enjoy the privileges and protection of local laws. The local courts are open to them for the redress of grievances. The estates of deceased members of the Five Civilized Tribes are administered in the county courts of Oklahoma. Their wills are probated and their heirs determined in such courts. Members of the Five Civilized Tribes are citizens of Oklahoma[10] and enjoy the privileges and benefits of that citizenship. It would seem to the writer of this opinion that the Enabling Act should be construed as consenting to the application of the local law of Oklahoma with respect to the devolution of property of Indians who are domiciled in and residents of that state, and that such property should be regarded as passing under the laws of Oklahoma and subject to inheritance tax by Oklahoma, but that view could only prevail if Childers v. Beaver, supra, were overruled. Whether it shall stand or be overruled, only the Supreme Court of the United States may decide.

The judgments are reversed and the causes remanded, with instructions to enter judgments for the amount of the tax paid on the transfer of each estate, with interest at three per cent per annum from the date of the respective payments.

MURRAH, Circuit Judge (dissenting).

Admittedly, there is no inhibition against the asserted power of the State of Oklahoma to tax the transmission of the Indian estates here involved, if the property passes under the laws of the State of Oklahoma, but the majority hold that the Indian estates here involved pass under Federal law and not under the laws of Oklahoma. This conclusion is reached by force of Childers v. Beaver, 270 U.S. 555, 46 S.Ct. 387, 70 L.Ed. 730, which considered the same question under an entirely different Federal statute relating to the disposition of Indian estates. The Act of June 25, 1910, 36 Stat. 855, as amended February 14, 1913, 37 Stat. 678, upon which Childers v. Beaver, supra, is predicated, relates to

---

[8] People v. McCormick, 327 Ill. 547, 158 N.E. 861, 864; Stebbins v. Riley, 268 U.S. 137, 140, 45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454; Chanler v. Kelsey, 205 U.S. 466, pages 479, 480, 27 S.Ct. 550, at page 554, 51 L.Ed. 882, dissenting opinion of Mr. Justice Holmes; In re Anderson's Estate, 205 Iowa 324, 218 N.W. 140, 142; In re Fish's Estate, 219 Mich. 369, 189 N.W. 177, 178, 179; Strauss v. State, 36 N.D. 594, 162 N.W. 908, 909, L.R.A.1917E, 909; In re Watson's Estate, 226 N.Y. 384, 123 N.E. 758, 761; In re Shepherd's Estate, 150 Misc. 653, 271 N.Y.S. 120, 122; In re Dillingham's Estate, 196 Cal. 525, 238 P. 367, 370; State v. Walker, 70 Mont. 484, 226 P. 894, 896; In re Heck's Estate, 120 Or. 80, 250 P. 735, 737; In re Sherwood's Estate, 122 Wash. 648, 211 P. 734, 737.

[9] Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815; Gillespie v. State of Oklahoma, 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338.

[10] Palmer v. Cully, 52 Okl. 454, 153 P. 154, 157, Ann.Cas.1918E, 375.

Indians other than members of the Five Civilized Tribes, and specifically exempts from its application members of those tribes.

Under the express provisions of this Act, supra, "it was the duty of the Secretary of the Interior to determine the heirs according to the state law of descent", but Congress provided how the lands should descend and directed how the heirs should be ascertained. The law of descent in Oklahoma is applicable only insofar as it is made a criterion for the guidance of the Secretary of the Interior, whose administrative duty it is to approve the execution of a will by an Indian ward, or to disapprove the same without regard to the law of Oklahoma. It is only after the disapproval of the will that the Secretary of the Interior is directed to determine heirship in accordance with the laws of Oklahoma. In no event does the law of Oklahoma have any operation or effect upon the execution of the will or the validity thereof. Neither are the courts of Oklahoma utilized to determine heirship in the event its laws become relevant. But the determination of heirship is an administrative function entrusted to the Secretary of the Interior, guided by local law. The probate courts of Oklahoma have no jurisdiction over the will or the determination of the heirship. Blanset v. Cardin, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950; Hanson v. Hoffman, 10 Cir., 113 F.2d 780.

But with respect to members of the Five Civilized Tribes, the Congressional policy as expressed by numerous statutes is entirely different. The history relating to the application of the laws of Oklahoma to the Five Civilized Tribes, including the law of descent, is well stated by the majority and need not be repeated here. It is sufficient to say that long prior to statehood, the prevailing law in the Indian Territory was applicable uniformly to the Indian as well as the white man. The Indian citizen was equally entitled to its protection and equally amenable to its processes.

With exceptions not material here, a member of the Five Civilized Tribes is authorized to dispose of his or her estate on the same footing as any other citizen. They are authorized to dispose of their estates by will in accordance with the laws of Oklahoma and not in derogation thereof. The law of Oklahoma is not merely a guide or criterion, but it creates the right and provides the means and manner of dis-

position. Jefferson v. Fink, 247 U.S. 288, 38 S.Ct. 516, 62 L.Ed. 1117; Blundell v. Wallace, 267 U.S. 373, 45 S.Ct. 247, 69 L. Ed. 664; see also Caesar v. Burgess, 10 Cir., 103 F.2d 503.

In my judgment, the valid distinction made clear by a comparison of Blanset v. Cardin, supra, and Blundell v. Wallace, supra, furnishes the basis for the denial of the taxing power of the state in Childers v. Beaver, supra, and the sanction of that power under the attendant circumstances. In Blanset v. Cardin, supra, the property was transmitted under and by virtue of an Act of Congress which provided the means and manner by which the property would pass, and its passing depended upon the administrative determination of the Secretary of the Interior, and not the courts of Oklahoma. The law of Oklahoma had relevancy only as a guiding principle which acted only by force of the administrative agency empowered to administer it. While in Blundell v. Wallace, supra, the laws of Oklahoma and the courts which interpreted them were made the arbiters of the right to direct the testamentary disposition, and the law of descent determined its disposition. As respects members of the Five Civilized Tribes, the right to dispose of their property by will is created by the law of Oklahoma. The executed will is valid according to Oklahoma law and it is enforceable only in the courts of that state. In the absence of a will, the right to inherit is created by Oklahoma law and is enforceable in its courts and not elsewhere or otherwise. Therein lies the incidence of the tax and the power to enforce it.

It is true that the laws of Oklahoma are made applicable and control the disposition of the property in virtue of a Congressional will, but I do not suppose that because the state law is made operative by will of Congress that the force of the law is any more impotent than if it had been derived from any other source from which the state exercises its sovereign powers.

Here the State of Oklahoma has by the force of its uniform laws as a sovereign state afforded a protection and conferred benefits for which it may exact a uniform tax. These estates are not tax-free instrumentalities of the Federal government, and the Federal government may and has exacted a similar tax. Landman v. Commissioner, 10 Cir., 123 F.2d 787. The state act imposing the tax does not expressly or inferentially exempt from its scope the

transmission of Indian estates. Neither has the Federal government expressly or inferentially exercised its indubitable power to exempt the transmission of the estates from the scope of the state taxing act. Nothing stands in the way of the exaction of the tax except the question of whether the property passes under the laws of the state. In my judgment, it does and the tax should be sustained.