In the Matter of the Claim of ALEXANDER HEATON, Appellant, against DELCO APPLIANCE DIVISION, GENERAL MOTORS CORP., Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 2, 1958.

*Samuel Weinreb* for appellant.

*Benedict T. Mangano* for Delco Applicance Division, General Motors Corporation, respondent.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

HERLIHY, J. Appellant contends that section 17 of the Workmen's Compensation Law is not applicable as the " 1794 Treaty of Amity Commerce and Navigation (Jay Treaty) " and the " 1899 Convention as to Tenure and Disposition of Real and Personal Property " guarantee to a nonresident alien the same rights as are afforded to a citizen of the United States.

The Constitution of the United States (art. VI, § 2) provides in part: " This Constitution, and the Laws of the United States * * * and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

In *Asakura* v. *Seattle* (265 U. S. 332, 342) the court said: " Treaties are to be construed in a broad and liberal spirit, and, when two constructions are possible, one restrictive of rights that may be claimed under it and the other favorable to them, the latter is to be preferred." (See, also, *Factor* v. *Laubenheimer,* 290 U. S. 276, 293; *Matter of Zalewski,* 292 N. Y. 332, 336.)

That part of the Jay Treaty survived the War of 1812 was first decided in *Society for Propagation of Gospel in Foreign Parts* v. *Town of New-Haven* (8 Wheat. [21 U. S.] 464 [1823]) and is still in force and effect. (*Clark* v. *Allen,* 331 U. S. 503; *Techt* v. *Hughes,* 229 N. Y. 222; United States State Department, Office of Legal Adviser, Treaties and other International Agree-

ments in force in Jan., 1958, p. 159 [U. S. Government Pr. Off. 1958, Department of State Publication 6626].)

Section 17 of the Workmen's Compensation Law which appellant claims inapplicable reads in part as follows: " Compensation under this chapter to aliens  *  *  *  about to become nonresidents of the United States  *  *  *  shall be the same in amount as provided for residents, except that dependents in any foreign country shall be limited to surviving wife and child or children  *  *  *  and except that the board, may at its option, or upon the application of the insurance carrier, shall, commute as of the date of death all compensation to be paid to such aliens, by paying or causing to be paid to them one-half of the commuted amount of such compensation as determined by the board. *In the case of a resident alien about to become nonresident the future payments of compensation shall be commuted as of the date of nonresidence.*" (Emphasis supplied.)

The last sentence of section 17 has been held by this court to apply to an injured alien claimant who has become a nonresident as well as a dependent of a deceased worker. (*Matter of Fogorty* v. *Young,* 1 A D 2d 751.)

Claimant contends that this section is not enforcible because of article X of the Treaty of 1794 (8 U. S. Stat. 116, 122) which reads: " Neither the debts due from individuals of one nation to individuals of the other, nor shares, nor monies which they may have in public funds, or in the public or private banks, shall ever in any event of war or national differences be sequestered or confiscated, it being unjust and impolitic that debts and engagements contracted and made by individuals, having confidence in each other and in their respective governments, should ever be destroyed or impaired by national authority on account of national differences and discontents."

And further because of the following excerpts from the Convention of 1899 (31 U. S. Stat. 1939) which read in part as follows:

" The United States of America and Her Majesty the Queen of the United Kingdom of Great Britain and Ireland, desiring to improve the condition of the citizens and subjects of each of the respective countries in relation to the tenure and disposition of real and personal property situated or being within the territories of the other, as well as to authorize the representation of deceased persons by the Consuls of their respective nations in the settlement of estates, have resolved to conclude a convention for those purposes

*  *  *

## Article II

" The citizens or subjects of each of the Contracting Parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other Contracting Party, whether resident or non-resident, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the citizens or subjects of the country where the property lies shall be liable to pay in like cases.

\* \* \*

## Article V

" In all that concerns the right of disposing of every kind of property, real and personal, citizens or subjects of each of the High Contracting Parties shall in the Dominions of the other enjoy the rights which are or may be accorded to the citizens or subjects of the most favored nation."

Appellant relies upon a case decided in this court, affirmed in the Court of Appeals, *Matter of Iannone* v. *Radory Constr. Corp.* (285 App. Div. 751, affd. 1 N Y 2d 671) which concerned a treaty made in 1948 with the Italian Republic which specifically made provisions (among others) for the protection of wage earners or individuals and relatives, heirs or dependents as the result of occupational disease, injury or death arising out of and in the course of employment or due to the nature of employment. We do not feel the decision of the court in that case is applicable to the present facts. The rule was different as to earlier treaties between the same countries. (*Maiorano* v. *Baltimore & Ohio R. R. Co.*, 213 U. S. 268.)

A United States Supreme Court decision *Liberato* v. *Royer* (270 U. S. 535 [1926]) concerned a claim for workmen's compensation under the laws of the State of Pennsylvania which provided in part: " alien parents \* \* \* not residents of the United States shall not be entitled to any compensation ". The claimant contended that this was overcome by a treaty with Italy which provided in part the establishment of " civil responsibility for injuries or death caused by *negligence or fault* " and gave to relatives or heirs of the injured party " right of action, which shall not be restricted on account of the nationality." The court held that the terms of the treaty did not include rights under the Workmen's Compensation Law and that the above-quoted section of the statute of Pennsylvania was effective because such rights were not dependent upon a showing of negligence or fault by the employer.

Considering the terms, conditions and circumstances under which article X became part of the Treaty of 1794 and giving to it the most favorable interpretation, it was never intended by the contracting parties to include our present day form of compensation between employer and employee or anything vaguely similar to it that might have been in effect at the time of the treaty. Its purpose was, by a Treaty of Amity Commerce and Navigation, to terminate the differences without respect to the merits; to produce mutual satisfaction and understanding; to regulate the commerce and navigation so as to render the same reciprocal to the benefit and satisfaction of both nations. Article X referred to the debts of individuals of both nations and their protection in the event of a war or national differences. It (art. X) was primarily to prevent in the future such unlawful confiscations practiced following the Revolutionary War. The article was directed to the rights of the individual as such and ineffective to abrogate section 17 of the Workmen's Compensation Law of the State of New York.

We likewise conclude that articles II and V of the Convention of 1899 is of no help or solace to the claimant. The wording of article II is clear that it was intended for the purpose of disposing of personal property by testament, donation or otherwise and it cannot inferentially under any favorable interpretation be construed to have application to the present facts.

There is no language in the treaty which can be construed to make claim for death or injuries arising out of the relationship of employer and employee. The right to recover without alleging negligence or fault is given solely and exclusively by the statute of which section 17 is a part. Even though social legislation such as this is subject to liberal interpretation, it cannot be so interpreted as to abrogate the wording and intent of the statute.

Article V, known under treaty language as the " most favored nation clause ", is not applicable to the present situation for the reasons previously mentioned herein (applies to division of personal property).

We do not under these circumstances determine what application the Italian treaty (*Iannone* case, *supra*) might have as to Great Britain under different circumstances and conditions.

Applying the many mandates mentioned herein, we conclude that as to the Treaty of 1794 and the Convention of 1899 there is nothing in the language, taking into consideration the time, circumstances and conditions when they were written and also the present day circumstances, that can overcome or abrogate

section 17 of the Workmen's Compensation Law of the State of New York.

In *Santovincenzo* v. *Egan* (284 U. S. 30, 40) the court said: "As treaties are contracts between independent nations, their words are to be taken in the ordinary meaning ' as understood in the public law of nations.' "

It has been necessary to document by way of amendment our own Constitution through the years and many new and modern treaties have been executed by this Government and other nations. Section 17, referred to herein, has been described as a harsh statute which finds very little justification in any principle of fairness. However, the fortuitous circumstances here cannot be overcome by judicial interpretation. Our duty is done when we enforce the law as written by the legislative branch of the Government.

In arriving at this conclusion, we are mindful of the admonition of Mr. Justice CARDOZO in *Techt* v. *Hughes* (229 N. Y. 222, 247): "No one can study the vague and wavering statements of treatise and decision in this field of international law with any feeling of assurance at the end that he has chosen the right path. One looks in vain either for uniformity of doctrine or for scientific accuracy of exposition. There are wise cautions for the statesman. There are few precepts for the judge. All the more, in this uncertainty, I am impelled to the belief that until the political departments have acted, the courts, in refusing to give effect to treaties, should limit their refusal to the needs of the occasion; that they are not bound by any rigid formula to nullify the whole or nothing  *  *  *  they are free to make choice of the conclusion which shall seem the most in keeping with the traditions of the law, the policy of the statutes, the dictates of fair dealing, and the honor of the nation."

The decision and award of the Workmen's Compensation Board should be affirmed, without costs.

FOSTER, P. J., BERGAN, GIBSON and REYNOLDS, JJ., concur.

Decision and award of the Workmen's Compensation Board affirmed, without costs.